[No. 23508. *En Banc.* June 3, 1932.]

JOSEPH BUERKLI *et al., Respondents,* v. ALDERWOOD FARMS *et al., Appellants.*[1]

*Bausman, Oldham, Walkinshaw & Jarvis, E. P. Donnelly,* and *Hart Snyder,* for appellants.

*Fred M. Bond* and *James P. Neal,* for respondents.

MILLARD, J.—Alleging constructive eviction by defendant lessors from a farm in Thurston county, plaintiff lessees brought this action to recover for damages claimed to have been thereby sustained. Denying eviction of plaintiffs, the defendants cross-complained, praying recovery for unpaid rental, waste and failure to return certain personal property. Trial of the cause to the court resulted in judgment (no findings of fact were made) denying recovery by either of the parties from the other on any of their several causes of action.

It was further adjudged that, pursuant to stipulation of the parties thereto, plaintiffs' note (and chattel mortgage securing same) payable to the defendants, "be paid and cancelled out of certain moneys" derived from the sale of the mortgaged chattels and deposited in a certain bank to await the determination of the rights of the parties to that fund. The remainder of the escrowed fund was awarded to the plaintiffs. Defendants appealed.

The facts, which are summarized as follows, clearly show there was a constructive eviction by the appellants of the respondents from the farm in question:

By written contract executed October 7, 1924, the

appellants leased to respondent Buerkli for a period of ten years, beginning November 1, 1924, certain farm lands and the buildings thereon in Thurston county. Buerkli entered into possession of the property November 4, 1924, and thenceforth operated the same as a dairy farm. In 1926, pursuant to its terms, the lease was assigned by Buerkli to respondent Cheese Factory, a corporation organized by Buerkli, whose liability, as provided by the lease, continued.

Respondents were obligated by the contract to pay the annual real property taxes assessed against the farm, to pay a monthly rental of one thousand dollars, to keep the buildings in good repair, to keep the buildings insured against loss by fire, and to make certain expenditures for maintenance of drainage ditches, etc. In the event of the total loss by fire of the farm buildings, the parties agreed, as follows, that the insurance money would be used for the purpose of constructing buildings in lieu of those destroyed:

"Seventh. The Lessee shall keep such buildings as he may determine should be insured, covered by fire insurance in a sum not less than sixty thousand dollars ($60,000.00), in companies acceptable to Alderwood Farms. In case of partial loss, the insurance moneys shall be used to repair the damage suffered. In case of total loss, the insurance moneys shall be utilized in constructing such improvements on the leased premises as Alderwood Farms and the Lessee may agree upon."

By way of settlement of the amounts then due under the several provisions of the contract, the respondents, on March 15, 1926, gave their note (and a chattel mortgage to secure payment of same) for fifteen thousand dollars to the appellants. On August 25, 1929, the buildings on the farm were totally destroyed by fire. At that time, the real property taxes for a number of years were delinquent, respondents were in arrears on

the monthly rental and were also indebted to appellants for fire insurance premiums. The above described note of the respondents to the appellants had not been paid. On October 9, 1929, the appellants were paid the amount due on the policies of insurance on the buildings which were destroyed by fire on August 25, 1929.

On September 15, 1929, appellants entered into an agreement with the respondents whereby the latter were permitted to sell the cattle upon which the appellants held a chattel mortgage to secure the payment of the note of fifteen thousand dollars. Pursuant to the terms of the agreement, the money received from the sale of the mortgaged chattels was escrowed in a bank to await the determination of the parties' respective rights to the fund.

The appellants and respondents had a number of conferences, all fruitless, relative to utilizing the insurance money, as provided by the seventh paragraph of the lease, for construction of buildings to replace the structures destroyed by the fire of August 25, 1929. The appellants never commenced rebuilding operations.

On November 15, 1929, respondents notified appellants that it was necessary to terminate the lease because of the failure of the appellants to use the insurance money for rebuilding. The attention of appellants was directed to the following arbitration provision of the lease, and request was made that the disputed matters be submitted to a board of arbitration:

"Twenty-eighth. It may become necessary under this lease to determine the value of properties, or cost of materials and labor, in respect to the various obligations of one party to the other. It is agreed that in case of any dispute and that Alderwood Farms and the Lessee are unable to arrive at a determination of

values, or the amount that one party is to pay the other, or the condition of any property, real or personal, then such determination shall be made by arbitration in the following manner. Alderwood Farms, representing the Lessors, shall appoint one arbitrator and the Lessee shall appoint one, who shall decide such dispute if possible, but being unable shall select a third, and the decision of any two shall be final and binding on the parties hereto.''

In reply, the appellants notified the respondents to pay the stipulated rental or surrender the premises. On December 15, 1929, the respondents departed from the leased premises and instituted an action for damages alleged to have resulted from the constructive eviction.

█ If a landlord's covenant to repair be breached by the landlord to such an extent as to render the leased premises no longer fit for the purposes intended, such breach constitutes constructive eviction, and releases the tenant from any further liability to pay rent, provided he abandons the premises to the lessor. *Stevens & Co. v. Pratt*, 119 Wash. 232, 205 Pac. 10, 28 A. L. R. 1445. So, too, where the landlord covenants to rebuild in case of loss of farm structures by fire, and the landlord neglects or refuses to rebuild, the tenant may claim a constructive eviction and abandon the premises, and be thereby released from any further liability to pay rent.

█ Respondents were not by the eviction released from liability for rents and other charges which accrued prior to the fire. 16 R. C. L., 952. The appellants are entitled, therefore, to recover from the respondents the charges—real property taxes, fire insurance premiums and rental—which accrued prior to August 25, 1929, the date of the fire.

In order to claim and assert a constructive eviction as a defense to an action for rent, the tenant must in

fact vacate the premises. Where the tenant continues to occupy the premises, he is liable for rent. True, he may counterclaim for damages. However, the question of the value of the lease to the respondents and the question of the damages respondents sustained by their eviction from the premises, are not before us, as respondents were denied recovery on their complaint, and did not appeal from the judgment.

The appellants are also entitled to a recovery from the respondents for rentals which accrued to the date of the abandonment (December 15, 1929) of the premises by the respondents. *Ralph v. Lomer,* 3 Wash. 401, 28 Pac. 760. See, also, *Stevens & Co. v. Pratt,* 119 Wash. 232, 205 Pac. 10, 28 A. L. R. 1445.

The assignments that the court erred in denying to appellants a recovery for other items have been carefully considered. The judgment as to those items will not be disturbed, as the evidence does not clearly preponderate against the judgment.

The contention of the respondents that the appellants are not entitled to a recovery for any of the items set forth in their cross-complaint, in view of the failure of the appellants to tender arbitration before seeking recovery, can not be sustained. The arbitration provision of the lease is not applicable to the matters for which appellants sought relief. By that provision, it is manifest that the parties intended only the determination of the value of properties or the cost of materials and labor.

The judgment is reversed and the cause remanded, with direction to the trial court to enter judgment in favor of the appellants in harmony with the views herein expressed.

TOLMAN, C. J., PARKER, MAIN, MITCHELL, HOLCOMB, and HERMAN, JJ., concur.

336

BEALS, J. (dissenting in part)—I concur in the foregoing opinion, but I believe that the reasons for reversing the judgment of the trial court, as stated in the opinion, require further modification of the judgment appealed from, by allowing appellants recovery of further amounts claimed by them, and disallowed by the court below.

[1]Reported in 11 P. (2d) 956.