[No. 32751.    Department One.    July 22, 1954.]

INLAND SECURITIES COMPANY, INC., *Appellant,* v. VALLEY CEMENT COMPANY, INC., *Respondent.*[1]

*G. E. Clark,* for appellant.

*Gavin, Robinson & Kendrick,* for respondent.

MALLERY, J.—The plaintiff, Inland Securities Company, Inc., owned a 5.3-acre tract of land upon which there were bunkers for sorting sand and gravel. Contiguous thereto were tracts of land with commercial quantities of sand and gravel, owned respectively by the Ross Construction Company and Leo S. Ross, individually. It should be noted that the Ross Construction Company and Leo S. Ross, individually, are not parties to this action.

The defendant, by its president, Eugene J. Auve, negotiated with plaintiff, through its president, Leo S. Ross, for a lease of the bunkers and the purchase of sand and gravel. They went upon and examined the three mentioned prem-

[1]Reported in 272 P. (2d) 620.

ises. Defendant agreed to lease these lands for three hundred dollars a month, which would give it the use of the bunkers and the right to take all the sand and gravel needed in its business at the rate of seven and one-half cents a yard for sand, and five cents a yard for gravel. Defendant was not aware that the lease executed and delivered by the plaintiff did not include the two adjoining properties bargained for, which contained practically all of the usable deposits of sand and gravel, and from which about ninety per cent of those materials were, in fact, taken. This is explained by the fact that the land described lacked landmarks, and could only be located by a surveyor.

After defendant had been operating upon the premises for some time, it constructed a culvert for the convenience of its vehicles and repaired the gravel hopper, which had been damaged by fire. Its claim for reimbursement from plaintiff for these items precipitated the controversy which ended in the instant litigation, when it attempted to offset these costs against accrued rental.

Two days before the suit for the rental was commenced, the secretary of plaintiff corporation had a conversation with the president of defendant corporation, who testified:

"A. He said unless we paid immediately, that he would either sue us or ask us to vacate the property. . . . I told him, 'You have a provision in your lease that you can ask us to vacate, but why don't you give us notice and we will vacate?' Q. What did he say to that, if anything? A. Well, he said, 'We are not going to ask you to vacate the property, you have leased, but we are going to ask you to stop taking gravel from the adjoining property.'"

The president of defendant corporation thereupon investigated the description in the lease and discovered for the first time that the sand and gravel had been extracted from the lands bargained for, but, in fact, actually outside of the description in the lease. Thereupon, defendant counterclaimed, in the instant action, for a rescission of the lease and for damages.

At the commencement of the action, there was a considerable quantity of sand and gravel stock-piled on the prop-

erty. It was stipulated by the parties that it might be removed by defendant at specified royalties, which was done.

The judgment herein awarded plaintiff a sum for rental and royalties; rescinded the lease; and allowed attorneys' fees and costs to neither party. The plaintiff appeals.

■ Appellant assigns the rescission of the lease as error. It is true respondent suffered no accrued monetary damage by reason of the wrong description in the lease, and that it took sand and gravel as if the description had been correct. However, after the conversation heretofore set out, the appellant did not offer to give respondent what it bargained for by securing for respondent the lease of Leo S. Ross to the land owned by him, and a lease of the Ross Construction Company to its land. Respondent's right to a rescission of the lease is predicated upon the fact that for the balance of the term it will not have what it bargained for, and not on account of any past monetary loss. Appellant cannot relegate respondent to trespasses upon the Leo S. Ross and Ross Construction Company lands in order to get what it bargained for. They are not parties hereto, and the court has no power to adjudicate their rights or excuse future trespasses without them having had their day in court.

■ Appellant contends that respondent is estopped from challenging its rights in the leased land upon the principle that a tenant cannot attack the title of the landlord. The tenant is not attacking the landlord's title, it is attacking omissions from the lease which deprived it of what it bargained for.

Appellant contends that the trial court erred in refusing to allow rental for the months subsequent to the commencement of the action during which time respondent removed the stored sand and gravel at the stipulated price. A statement of the facts of the contention is a sufficient answer to it.

Appellant contends that the trial court erred in refusing to allow it attorney's fees and costs, which the lease pro-

vided should go to the prevailing party. Neither party prevailed and, hence, neither is entitled to them.

We find no merit in appellant's assignments of error directed to the findings of the trial court. They are supported by the record.

The judgment is affirmed.

HAMLEY, FINLEY, and OLSON, JJ., concur.

GRADY, C. J. (dissenting)—I am not in accord with the majority opinion that the combined lease and sales contract should be rescinded. The maps in evidence show an area in and along the banks of the Yakima river upon which were large deposits of wash gravel and sand. The appellant, of which Leo S. Ross was president, owned a certain 5.3-acre tract adjacent to such sand and gravel areas, upon which there had been erected a gravel bunker with screens, pump, motors, etc., for the washing and screening of the sand and rock. A part of this sand and gravel area was owned by Leo S. Ross and a part by Leo S. Ross, doing a contracting business under the trade name of Ross Construction Company.

Ross and Auve had been business acquaintances and personal friends for many years. Ross had constructed roads and structures requiring the use of large quantities of gravel, sand, and cement. Auve had been engaged in the cement business. He desired to secure sand and gravel for his customers. The Ross plant and sand and gravel areas were located about three miles from Yakima. Auve had a rock crusher, which he desired to use to break up the large rock. He was by no means a gullible novice in negotiating or making a business transaction, nor the type of person easily frightened when taken to task for a breach of contract.

Considering the agreement involved in the light of conditions shown by the record to have existed at the time of its execution, January 25, 1950, it is clear to me that the bunker site and plant were leased to respondent for a term of one year with an option of renewal at a rental of three hundred dollars per month, with a limitation upon the

number of hours per month that the plant might be operated; and that appellant contracted to sell to respondent such sand and gravel as it desired to excavate, process, and remove from the adjoining areas at a price of five cents per yard for gravel and seven and one-half cents for sand. In the document, the bunker site leased was described, but the document contained no description of the Ross tracts, from which the sand and gravel were to be taken. The lease part of the document required that respondent should make all necessary repairs to and replace all broken or wornout parts of the sand and rock processing plant without cost to appellant. The sale and purchase part of the contract required respondent to keep a true and accurate account of all sand and gravel removed from the premises and to render a written accounting and statement to appellant on the first day of each and every month.

About one year prior to the making of the combined lease and sales contract, Ross made written offers to Auve: (a) to sell all the plant and equipment for a cash price with a royalty agreement for sand and gravel removed from the property; or (b) to rent the plant and equipment for a fixed price per month; (c) to lease forty acres of the sand and gravel area—respondent to put in its own plant and pay a minimum royalty of one thousand dollars per year. After some negotiations, Ross had his attorney prepare a combined lease and sales agreement in which the plant site only was described. Auve was not satisfied with the proposed agreement as drawn and had one prepared by the attorney who later represented him at the trial.

Prior to the execution of the contract, Ross and Auve went upon the premises, and Auve inspected the plant and the area from which the sand and gravel were to be removed.

My main difference with my associates is that they consider the entire contract as a lease, but deficient in that the sand and gravel areas are not set forth in the document by legal description, and that Ross perpetrated a fraud on Auve when the latter inspected the plant and sand and

gravel areas in that he was not informed that they were owned by Ross and not by appellant. The deduction from this is that Auve was put to a disadvantage, in that he had no legal assurance that he would have a continuing right to take sand and gravel from the area during the period covered by the lease on the plant site. Much might be said in favor of this view if the parties were all strangers to each other, particularly the appellant corporation and Ross.

I can see no substance to the theory advanced by Auve. He knew at all times from the offers that had been made to him and during the negotiations that he would have a lease for the plant site. An offer had been made to lease to him forty acres of the sand and gravel areas, but he did not accept such offer. He did accept the offer to purchase sand and gravel. Both the contracts prepared by the attorney for Ross and the attorney for Auve have a dual aspect; one part is a lease of a plant site and the other a contract of sale and purchase. This is supported by that which is a matter of common knowledge: Usually, one leases real property or such a thing as a processing plant in order that he may make use of it and produce something for himself. Usually, if a party desires to acquire such commodities as logs from growing timber or sand and gravel from a gravel pit, he does not need a leasehold estate or interest in the land. All he needs is permission to enter so that he may sever the commodity which he has purchased and remove it from the premises. The making of the sale, by necessary implication, carries the right of entry and the doing of the necessary things on the land to permit the putting of that which is purchased in a usable condition.

Upon severance, the property becomes personal property, and in a written contract of sale thereof by the owner the law does not require that the real property be set forth by legal description. It is sufficient that the minds of the parties meet with reference to the place from which the timber or sand and gravel is to be taken. When Auve negotiated the transaction with Ross and when his attorney

prepared the contract and gave it its dual aspect, all parties must have understood that Auve was not leasing the sand and gravel areas.

Even though we may accept Auve's statement that he assumed the corporation appellant owned the sand and gravel areas and by the contract had granted him the right of entry upon and to take the sand and gravel from the property, his legal rights were not in any way affected by the fact that such areas were owned by Ross. Certainly it must be said that, by his conduct, Ross would be estopped from denying to Auve the right to enter upon the sand and gravel areas and excavate and take therefrom such sand and gravel as were the subject of the contract. 21 C. J. 1113, § 116. The text was quoted with approval in *Strand v. State,* 16 Wn. (2d) 107, 132 P. (2d) 1011.

It is quite clear to me that the idea of Auve's that it was contemplated the lease should cover the sand and gravel areas was an afterthought and became a creature of his mind when appellant insisted that he pay what he was in arrears for rent on the plant. Auve was wrong in his refusal to pay rent. He sought to justify such nonpayment by claiming that respondent had failed to rebuild a culvert which had been washed out and had failed to repair the plant which had been damaged by fire. The culvert had been constructed by respondent as a means of ingress to and egress from the property. At the time the lease and contract were made, means of ingress and egress were afforded by a bridge. The bridge became damaged after the contract was made. Ross offered to repair the bridge, but Auve found it more convenient to build a culvert in a different location. The fire damage occurred after respondent took possession of the plant. The lease covering the plant provided that respondent should keep it in a good state of repair. Damage by fire was not excepted as is the case in many leases. Respondent had no legal right to breach its lease because appellant failed to yield to demands to do something it had not obligated itself to do. Appellant had no recourse except to sue for the rent and then was met with this afterthought and charged with

fraudulent misrepresentations and a claim that the whole contract was ineffectual because the Ross tracts of land were not set forth therein by legal description.

The judgment should be reversed.

October 18, 1954. Petition for rehearing denied.