THOMAS, Justice.
The appellees sued the appellants and were awarded a judgment for $12,000 based upon a verdict of a jury fixing their damages at that amount. Although the issues were relatively simple the appellants have presented thirteen questions in their brief. The appellees urged that only three questions need be answered. We think there is but one.
The action grew out of a lease, between the appellants as lessors and the appellees as lessees, of property known as Rosemont Hotel. It was alleged in the complaint that the appellees had meticulously performed their part of the agreement but that the appellants had violated a provision that they would “keep” the roof and exterior walls of the building “in good repair, sound, waterproof and free from leaks * * The appellees charged that there were numerous cracks and breaks in the walls which admitted water in such quantity that the lobbies and some inside rooms and halls were damaged and rendered unsightly. Thirty rooms were so affected, averred the appellees, that it was necessary to reduce the rental of each by the amount of $15 weekly in the season and by the amount of $4 each week the rest of the year. The appellants, it was charged, ignored demands to repair the defects and as a consequence the appellees had suffered a loss of $15,000.
The main issue to be decided by the jury was whether or not the appellants had disregarded their undertaking under the lease, an obligation stated very simply, in unambiguous language, namely, that they would maintain the roof and outside walls in such condition that water could not enter the building. There was abundant testimony, which the jury obviously accepted, that the appellants not only failed to abide by .their promise, but that the appellees were materially damaged by the default.
Our lone problem, so we think, is whether or not the jury was properly guided to a conclusion relative to the amount of the damage sustained.
It was established that all rooms of hotels of the type and size of Rosemont situated in the same locality were occupied ten months of the year and that half the rooms were occupied during the months of May and September.
In Silver Springs O. & G. R. Co. v. Van Ness, 45 Fla. 559, 34 So. 884, 889, we ap *114 proved a charge to the jury that “ [gjains prevented, as well as losses sustained, may be recovered as damages for breach of a contract, when they can be rendered reasonably certain by evidence, and have naturally resulted from breach of contract.’ ”
It seems to us that when compared with the admeasurement of damages in the myriads of situations that come before the courts for study, the determination of damages in the present case was refreshingly simple. The discoloration from leakage for fifty-two weeks resulted in a reduction in the weekly rental from thirty rooms of four dollars for twenty-two weeks and fifteen dollars for twenty-one weeks, and a reduction in the rental from fifteen rooms of four dollars for nine weeks.
From these circumstances a formula may be applied that is, as we have said, much more accurate than any that could be used in innumerable situations where damage is shown and the measure of that damage is undertaken. And if we adopt the premise with reference to the occupancy of hotels in the neighborhood, the subject of prospective loss is reduced to a minimum. Also, when this case was tried damages were based on retrospective considerations.
The measure used by the jury seems to harmonize with the expression of this court in Leslie E. Brooks Co. v. Long, 67 Fla. 68, 64 So. 452, 453, that “the lessee can recover from the lessor, for breach of a contract to deliver possession of the leased premises, the difference, if any, between the rent contracted to be paid and the actual rental value of the premises. Prospective profits from the business that the lessee expected to conduct in said premises are too remote and speculative, dependent upon too many contingencies to be permissible as an admeasurement of damages in such a case.” We see no difference between the principle involved in that case and the one here, so far as the question of damage is concerned. The effect of appellants’ default was even more clearly ascertainable by the method used here than establishing the “rental value” where property had’ not been delivered at all, and deducting from that amount the rental contracted to be paid. In this case the depressed rental value traceable to the default was set by the difference between the amounts received for rooms unaffected by the leakage and those that were damaged.
The law on the subject of failure by the landlord to fulfill a promise to repair is set out in Masser v. London Operating Co., 106 Fla. 474, 145 So. 72, 79, 84. If because of the default the property becomes untenantable, the tenant may abandon it and escape liability for rent; if there is a failure on the part of the landlord to make repairs which do not render the property unhabitable, the tenant may either make the repairs after reasonable notice to the landlord, or leave the premises in disrepair and “sue * * * for the damages * * * sustained from the lessor’s failure to repair.”
This brings us back to our starting point. The appellees chose the latter course. They proved damages to an amount exceeding that appearing in the verdict.
The judgment is
Affirmed.
DREW, C. J., and TERRELL and THORNAL, JJ., concur.