ARO GLASS & UPHOLSTERY CO., *Appellant*, v. MUNSON-SMITH MOTORS, INC., *et al.*, *Respondents*.

*Gerald L. Hulscher* (of *Comfort, Dolack, Hansler & Billett*), for appellant.

*Richard B. Sanders*, for respondents.

PETRIE, J.—Munson-Smith Motors, Inc. (hereinafter referred to as Munson-Smith) rented a used-car lot from Aro Glass & Upholstery Co. (hereinafter referred to as Aro) on premises adjacent to Aro's business. The parties entered into a 3-year written lease on July 23, 1970. The term of the lease commenced on August 1, 1970, and was scheduled to terminate on August 1, 1973. The rent was $800 per month. This lease was prepared by Aro's attorney and contained the following provision for payment of attorney's fees:

> If by reason of *default* on the part of either Lessors or Lessee, it becomes necessary for the other to employ an attorney *to enforce any of the provisions of this Lease*, the parties in default agree to pay all the costs, expenses and attorney's fees reasonably expended and incurred by the other party in connection therewith.

(Italics ours.)

Miss Alberta Smith, a principal of Munson-Smith, drew up a detailed description of agreed improvements which was incorporated into the lease. This list of improvements included a provision which specified: "Asphalt on car lot: to be leveled so as to prevent substantial puddles."

In the fall of 1970, Aro had an asphalt paver resurface the lot by putting a layer of asphalt over the existing contours of the lot. The resurfacing did not solve the problem of puddling and Aro had the asphalt company return and chip some trenches in the problem areas. The trenches did not correct the puddling and Munson-Smith continued to demand that the covenant be performed. Aro's promises never materialized into action.

In January of 1972, Miss Smith wrote Aro requesting that some corrective action be taken. There was no response to the note. Finally, on September 19, 1972, Munson-Smith's attorney made a formal request demanding that the corrective action be taken by October 6, 1972, or Munson-Smith would terminate its obligations under the lease. September rental payment was withheld pending correction of the puddling problem. Aro took no corrective

action before the deadline expired. Munson-Smith obtained a new location for its business and on October 24, 1972, began to move from the Aro lot, completely vacating by November 13, 1972.

Aro responded to the withholding of rent by filing a complaint for delinquent rent and attorney fees. Munson-Smith's answer asserted that it had been constructively evicted from the premises and also asserted a counterclaim for damages and attorney fees. The court found that Munson-Smith had been constructively evicted, but nevertheless remained liable for rent until the premises had been completely vacated. The trial court also awarded Munson-Smith a portion of its claimed moving expenses and granted it attorney fees in the amount of $700.

■ Aro's appeal challenges the trial court's finding of constructive eviction, the failure of the trial court to require payment of rent for the balance of the term of the lease, and the failure of the trial court to grant it attorney fees. Munson-Smith's cross-appeal challenges the trial court's determination that rent liability continued until the premises had been completely vacated. The cross-appeal also challenges the trial court's failure to assess, as additional damages, the loss of use of a commercial sign which Munson-Smith moved to storage, and also challenges the limited award of attorney fees. We consider first the issue of constructive eviction.

A constructive eviction occurs when there is an intentional or injurious interference by the landlord or those acting under his authority, which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises or any part thereof, or materially impairs such beneficial enjoyment. *Coulos v. Desimone*, 34 Wn.2d 87, 208 P.2d 105 (1949). Whether there has been such an eviction is, of course, generally a question of fact to be determined by the trier of the facts.

*Myers v. Western Farmers Ass'n*, 75 Wn.2d 133, 134-35, 449 P.2d 104 (1969).

██ Under *Myers,* the trier of fact must determine the question of fact whether or not there has been an eviction. Findings supported by substantial evidence should not be disturbed on appeal. Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. *State v. Zamora,* 6 Wn. App. 130, 132-33, 491 P.2d 1342 (1971).

At trial, the principal witness on constructive eviction was Mr. Jones Covington, an expert on asphalt surfaces and a professional engineer from Seattle. Covington's testimony focused on two main trouble spots—a north-south puddle on the front lot and an east-west puddle running directly in front of the offices and garage leased from Aro. Evidence indicated that the north-south puddle measured 30 feet in length, 4 feet 1 inch in width, with an average depth of three-eighths of an inch, the deepest portion being 1 inch; the east-west puddle was 50 feet long, 4 feet 4 inches wide and one-fourth inch deep. Covington expressed the opinion that standing water over one-sixteenth of an inch was abnormal and created a safety hazard.

Miss Smith and her employee, Walt Dale, testified that the standing water caused potential customers to drive away from the premises to the detriment of Munson-Smith's business. Mr. Victor Lyon, an appraiser, computed damage on a square-foot formula. He assigned a dollar value to each square foot based on the monthly rental. He estimated the number of square feet covered by the puddles, multiplied this by the number of wet months, and concluded that the puddles diminished the rental value by $20 per month. The trial court determined (and Aro does not challenge the award based thereon) that the rental value of the premises had been diminished during Munson-Smith's 27-month tenancy by $540.[1] We find substantial evidence to support the trial court's factual finding of eviction.

---

[1]The trial court appears to have determined that the covenant to prevent substantial puddling was breached from the commencement date of the lease. When a tenant remains in possession following

Aro argues, however, that the puddling is not sufficient to sustain a constructive eviction as a matter of law. In pursuit of this contention, Aro directs our attention to the minimal loss of value of the premises as measured by Munson-Smith's own appraiser. A landlord's breach of a covenant in a lease, causing the property to become no longer fit for the purposes intended, is a substantial interference and grounds for constructive eviction. *Stevens & Co. v. Pratt*, 119 Wash. 232, 205 P. 10, 28 A.L.R. 1445 (1922). The lease between Aro and Munson-Smith contained a specific provision that substantial puddling be prevented by leveling and asphalting the lot. The lot was paved but the problem, rather than being eliminated, continued over a 2½-year period. Numerous demands were made to correct the problem but the puddling persisted, creating a safety hazard and damaging Munson-Smith's business. We cannot say as a matter of law that the failure to comply with the covenant did not materially and substantially impair Munson-Smith's beneficial enjoyment of the leasehold. We find no error in the trial court's determination that Munson-Smith had been constructively evicted from the premises.

Finally, Aro contends that Munson-Smith waived any claim of eviction by continuing to occupy the premises and by continuing to pay the rent after the first request to correct the puddling. In an action for payment of delinquent rent, the lessee's right to assert constructive eviction as an affirmative defense may be waived when the tenant asserts either (1) a deficiency which the landlord has had no opportunity to rectify, *Pague v. Petroleum Prods., Inc.*, 77 Wn.2d 219, 461 P.2d 317 (1969); or (2) a deficiency which the tenant has knowingly relinquished. In the case at bench, the landlord had ample opportunity to correct the situation—and indeed, made several unsatisfactory attempts to correct the situation. Clearly, also, Munson-Smith

---

breach, the measure of damages is said to be the difference between the value of the use of the property with and without the interference. 1 American Law of Property § 3.52, at 285 (A. J. Casner ed. 1952); *Purcell v. Warburton,* 70 Wash. 129, 126 P. 89 (1912).

continually pursued its requests and demands that corrective action be taken. Under that state of the facts the lessee cannot be said to have waived the right to assert constructive eviction as a defense to the action for rent.

■ We turn, then, to that portion of Munson-Smith's cross-appeal which asserts that the trial court erred by requiring rent payments to continue until the premises had been completely vacated. When the premises subject to a lease are no longer fit for the purposes intended, the resultant constructive eviction releases the tenant from any further liability to pay rent, provided he abandons the premises to the lessor. *Buerkli v. Alderwood Farms,* 168 Wash. 330, 11 P.2d 958 (1932). Munson-Smith formalized its conviction that it was effectively evicted from the premises by September 1972, when its counsel demanded that corrective action be taken within a specified period of time. Aro took no remedial action, and instead, filed a complaint for delinquent rent. Munson-Smith's continued occupancy of the premises—for a reasonable period thereafter—rendered it liable to Aro for the *use and occupancy* of the premises despite the eviction. The measure of that use value in the absence of proof to the contrary is usually, as it was here, the previously agreed upon rent. *Buerkli v. Alderwood Farms, supra.*

The trial court committed no error by holding Munson-Smith liable for rent during its continued occupancy of the premises until mid-November 1972.

■ We pause only momentarily to consider the issues presented by the trial court's treatment of Munson-Smith's counterclaim for damages. In case of wrongful eviction, the tenant is entitled to recover all the damages which reasonably resulted to him from the landlord's wrongful act, *McKennon v. Anderson,* 49 Wn.2d 55, 298 P.2d 492 (1956); which are properly pleaded, *Woodward v. Blanchett,* 36 Wn.2d 27, 216 P.2d 228 (1950); and which are proved with reasonable certainty. *Producers Grocery Co. v. Blackwell Motor Co.,* 123 Wash. 144, 212 P. 154 (1923).

The trial court did grant damages to Munson-Smith for its costs incurred by reason of the necessity to move equipment and stock to the new location ($444.70) and to move a commercial pole sign to storage ($131.25). The pole sign was moved to storage because the new location had a reader board sign in place, which Munson-Smith chose to utilize. The trial court disallowed, as an item of Munson-Smith's damages, the continuing monthly payments for which Munson-Smith was contractually liable to a third party on the unexpired term of the sign lease. The *loss of use* of the sign was the result of Munson-Smith's own decision to utilize the existing reader board at the new location; it did not result from the eviction. Had Munson-Smith decided to continue the use of the original sign—which would have involved an installation cost for a proper foundation —the installation cost may well have been allowable as damages reasonably caused by the eviction. We find no error, however, in the court's disallowance of this continuing expense item.[2]

██ Finally, we turn to the issues presented by the trial court's award of attorney fees. Aro contends that the attorney fee clause in the lease should be interpreted to limit recovery of fees only in those instances in which a party is seeking specific performance of the lease. Resolution of that issue requires that we examine briefly the nature of a tenant's remedies in the event of his eviction by his landlord. Eviction constitutes a disruption of a tenant's possessory interest in the land demised. The evicted tenant may seek to regain the fullness of his possessory interest—in which case he would have access to the various forms of injunctive relief; or he may treat the eviction as having terminated or diminished certain of his leasehold rights and responsibilities—in which case he may seek such damages and benefits as flow from that termination or diminution. *See generally* 1 American Law of Property § 3.52, at 283 (A. J. Casner ed. 1952). In either case, the tenant's cause of

---

[2]Munson-Smith made no attempt to assert or prove lost profits as an item of damages.

action springs from his right *to enforce* a provision of his lease, expressed or implied. Employment of an attorney to enforce any provision of the lease is the first prerequisite to allowance of an attorney fee under the appropriate clause of the lease between Aro and Munson-Smith.

In any event, Aro contends, neither party prevailed and thus no attorney fees should have been allowed, citing *Inland Sec. Co. v. Valley Cement Co.*, 45 Wn.2d 51, 272 P.2d 620 (1954). *Inland Security* is simply not applicable. In that case, although the specific clause was not set forth in the opinion, attorney fees were to be awarded to the prevailing party. Because neither party prevailed, the trial court refused—and the Supreme Court affirmed the refusal —to allow attorney fees to either party.

In the case at bench, the second prerequisite to an award of attorney fees requires resolution of the question of which party was in default. Clearly, the trial court determined—and we affirm—that Aro was in default. Clearly, also, because Aro had not complied with its express warranty to asphalt and level the lot so as to prevent substantial puddles, it defaulted in its implied promise not to interfere with Munson-Smith's implied right of quiet enjoyment. Thus, it became necessary for Munson-Smith to employ an attorney to enforce both an express and an implied provision of the lease because of Aro's default. Obviously, under the terms of the lease, Munson was entitled to an award for attorney fees.

In its cross-appeal, Munson-Smith asserts that the amount of the trial court's award for attorney fees was insufficient. We agree.

At the conclusion of trial, the court accepted an exhibit "as any other piece of evidence" entitled "Summary of Expenses of Litigation & Reasonable Attorney Fees" submitted by counsel for Munson-Smith. The exhibit lists expenses incurred totaling $962.75 and attorney fees totaling $3,990. The record reflects that the trial court considered Munson-Smith as being successful in its affirmative defense

to Aro's complaint for rent due on the balance of the term of the lease, but as being unsuccessful in its counterclaim for damages. The court thereupon announced:

> The Court will find, as a matter of fact, that the major portion of the litigation expenses incurred by Miss Smith was on her unsuccessful counterclaim, and the Court will award an attorneys' fee in litigation expense only as it would relate to the defense of the basic suit. The Court will allow $700.00 as the total litigation attorneys' fees to Miss Smith, and will deny any other recovery.

In our opinion, the trial court misconceived its role in determining the amount of attorney fees to be awarded Munson-Smith. Having determined that Aro was in default, the trial court—under the terms of *this* lease—was required to determine "all the costs, expenses and attorney's fees reasonably expended and incurred" by Munson-Smith to enforce any provision of the lease, which included expenses and fees reasonably incurred in pursuit of its affirmative defense that it had been constructively evicted from the premises *and* any such expenses and fees reasonably incurred in pursuit of damages which flowed from the fact of that eviction.

The trial court has not as yet ascertained the amount of reasonable expenses and fees which Munson-Smith incurred. Accordingly, this matter must be remanded with direction to ascertain the amount of those fees and expenses, together with the amount of fees and expenses incurred by Munson-Smith in responding to Aro's appeal to this court and in pursuing its own cross-appeal.

Except as to the matter of attorney fees and expenses, the judgment of the trial court is affirmed and this matter is remanded for further proceedings consistent herewith.

PEARSON, C.J., and ARMSTRONG, J., concur.