[No. 5422-1. Division One. October 9, 1978.]

AGRONIC CORPORATION OF AMERICA, ET AL, *Respondents*,
v. BJORN N. DEBOUGH, ET AL, *Appellants*,
AGRONIC INTERNATIONAL LIMITED,
*Respondent*.

*Holman & Farrell, P.S., James A. Holman,* and *James W. Aiken,* for appellants.

*Breskin, Rosenblume & Robbins* and *Arnold Robbins,* for respondents.

JAMES, J.—Defendant, Bjorn N. deBough, is the inventor of a small, hand–held, battery–powered device called the Green Thumb Plant Communicator used to measure the moisture and nutrient content of the soil of house plants. DeBough intended that it could also be adapted to function as a boat bilge alarm and a diaper moisture sensor.

Plaintiff, Agronic Corporation of America, is a corporation which was formed by deBough to market the device. DeBough became the principal stockholder, director, and president of the corporation.

Intervenors, Anthony T. Ressa, Robert D. Swenson, and Charles L. Hamley, became minority stockholders in Agronic of America. Additional defendant, Agronic International Limited, is a corporation which deBough formed 2 years after Agronic of America was incorporated. DeBough is the sole owner of the capital stock of Agronic International.

By an instrument entitled "Assignment," deBough assigned to Agronic of America "the rights, use and benefits of patents and all development work for soil moisture sensors, boat bildge [*sic*] alarm and diaper moisture sensors." Exhibit 3. The complaints of Agronic of America and the intervenors charge deBough and his wife, Lita, the appellants herein, with fraud, deceit, misfeasance, malfeasance

and misappropriation of corporate funds.[1] Both sought monetary and injunctive relief in favor of the plaintiff corporation. The pivotal issue at trial concerned the nature and extent of the rights conveyed to Agronic of America by deBough. DeBough contended that he gave Agronic of America only a nonexclusive license to use his initial patent in the manufacture and marketing of "plant communicators" in the United States.

After a lengthy trial, the trial judge ruled in favor of Agronic of America. He found that deBough had granted Agronic of America the exclusive worldwide right to use, manufacture, and market the Green Thumb Plant Communicator as covered by both deBough's original and subsequently obtained patents. He further found that the deBoughs had breached their fiduciary obligations to Agronic of America and its shareholders as follows:

1. Secretly forming Agronic International for the purpose of competing with Agronic;

2. Secretly entering into a contract between Agronic International and Gold Peak Electric Company Limited of Hong Kong;

3. Secretly obtaining royalties for the sale of plant communicators pursuant to the contract between Agronic International and Gold Peak;

4. Secretly establishing a bank account in Bermuda to receive the royalties from Gold Peak;

5. Withdrawing funds from Agronic bank accounts in the amount of $50,760.70 without the knowledge or authorization of the board of directors;

6. Issuing 20,000 shares of Agronic stock to himself without the knowledge of or authority from the board of directors;

7. Issuing promissory notes to Lita deBough in the amount of $56,683.77 without the knowledge of or authority from the board of directors;

---

[1] Intervenors' derivative action is authorized by RCW 23A.08.460 and CR 23.1.

8. Issuing Lita deBough 20,000 shares of Agronic stock and granting her a security interest in assets of Agronic to secure her loan to Agronic without the knowledge of or authority from the board of directors;

9. Threatening to render Agronic insolvent by calling Lita deBough's promissory notes and threatening to interfere with Agronic's supply of plant communicators from Gold Peak.

The parties agree that the relief granted by the trial judge is fairly summarized as follows. All deBough counterclaims were dismissed with prejudice with the exception of that of Lita deBough for moneys she had loaned to Agronic of America. The relief granted Agronic of America was as follows:

A. Stock Ownership:
    (1)  Number of Shares:
        (a)  Bjorn.N. deBough—240,000 shares
        (b)  Anthony T. Ressa—20,000 shares
    (2)  Injunctions:
        (a)  Bjorn deBough was permanently enjoined, as were his heirs, assigns and successors in interest from voting his shares;
        (b)  No dividends to be paid on Bjorn deBough's shares until judgment paid in full; stock certificates to indicate such.

B. Personal Injunctions:
Bjorn deBough and Lita deBough were permanently enjoined from:
    (1)  Competing with Agronic Corporation of America;
    (2)  Contacting the manufacturers, suppliers, marketing agents, wholesalers or contractors of Agronic Corporation of America; and
    (3)  Interfering with or participating in the business affairs or operations of Agronic Corporation of America.

C. Money Judgments:
Agronic Corporation of America was granted a money judgment against Bjorn deBough and the marital community composed of Bjorn and Lita deBough in the amount of $54,010.70 for funds withdrawn from Agronic bank accounts without authority and $41,645 for royalties received from Gold Peak, less $3,000

which inured to the benefit of Agronic. As an offset against that judgment was the judgment granted to Lita deBough in the amount of $56,683.77, leaving a net judgment against Bjorn deBough and the marital community composed of Bjorn and Lita deBough in the amount of $33,321.93 [*sic*].

D. Patent Issues:

Agronic Corporation of America was adjudged to have the exclusive, worldwide license without limitation to manufacture, market and use the Plant Communicators utilizing circuits covered under U.S. patents owned by Bjorn deBough, including, but not limited to, those for Canada, England, Taiwan, Japan, Korea, and the Philippines, as well as developments therefrom.

The deBoughs' appeal presents only two issues. (1) Does the evidence support the trial judge's findings? (2) Was the relief granted an appropriate exercise of equitable jurisdiction?

The first issue may be disposed of summarily. Findings of fact will not be disturbed on appeal if supported by substantial evidence. *Aro Glass & Upholstery Co. v. Munson–Smith Motors, Inc.*, 12 Wn. App. 6, 528 P.2d 502 (1974); *State v. Zamora*, 6 Wn. App. 130, 491 P.2d 1342 (1971). Substantial evidence is that character of evidence which convinces an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. *Aro Glass & Upholstery Co. v. Munson–Smith Motors, Inc.*, *supra; State v. Zamora, supra.* An appellate court may not substitute its findings for those of the trial court, even if the reviewing court would have resolved a factual dispute the other way unless the findings of the trial court are clearly unsupported by the record. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). The record brought to us clearly establishes that the trial judge's findings are supported by substantial evidence.

Concerning the relief to be granted, the parties agree that the appropriate rule is as stated in 27 Am. Jur. 2d *Equity* § 103 (1966):

The power of equity is said to be coextensive with the right to relief; it is as broad as equity and justice require. In the administration of remedies, an equity court is not bound by the strict or rigid rules of the common law; on the contrary, the court adapts its relief and molds its decrees to satisfy the requirements of the case and to protect and conserve the equities of the parties litigant.

As above stated, the judgment provides that

Bjorn deBough, his heirs, assigns and successors in interest and anyone acting for or on behalf of Bjorn deBough as agent, proxy or otherwise, are permanently enjoined from voting Bjorn deBough's 240,000 shares of stock or any other stock claimed by Bjorn deBough in Agronic Corporation of America. The new stock certificate(s) to be issued to Bjorn deBough by Agronic Corporation of America shall contain language indicating that voting of the shares represented thereon has been permanently enjoined.

■ The essential elements which must be shown before an injunction will be granted are necessity and irreparable injury. *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 508 P.2d 628 (1973). A party seeking an injunction must

show a clear legal or equitable right and a well–grounded fear of immediate invasion of that right. *State ex rel. Hays v. Wilson,* 17 Wn. (2d) 670, 137 P. (2d) 105. Furthermore, the acts complained of must establish an actual and substantial injury or an affirmative prospect thereof to the complainant.

*King County v. Port of Seattle,* 37 Wn.2d 338, 345, 223 P.2d 834 (1950).

The purpose of an injunction is not to punish a wrongdoer for past actions but to protect a party from present or future wrongful acts. *Lewis Pac. Dairymen's Ass'n v. Turner,* 50 Wn.2d 762, 314 P.2d 625 (1957). A court should not issue an injunction when the harm it will do to a defendant is disproportionate to the damage caused a plaintiff by the action he asks be enjoined. *Holmes Harbor Water Co. v. Page, supra.*

In this case, the injunction appears to be punitive in nature and not justified in equity by the speculative nature

of prospective harm to the plaintiffs. Denial of voting rights in the shares of stock now owned by deBough and his successors in interest in those shares could make the stock virtually worthless. The plaintiffs have not shown that the exercise of these voting rights will cause them irreparable injury.

We are satisfied that the remaining provisions of the judgment provide adequate relief. The matter is remanded to the trial court for the entry of a judgment without the permanent injunction of voting rights.

FARRIS, C.J., and DORE, J., concur.

Reconsideration denied December 20, 1978.