ROBERT P. SMITH, Jr., Judge.
The tenant appeals from a money judgment for unpaid rent, entered for the landlord after a nonjury trial. The five-year commercial lease required the landlord to maintain the roof of the building and required the tenant to maintain all other parts of the premises. Throughout the tenant’s four-year occupancy, portions of his restaurant flooded after heavy rains because of leaks which the tenant complained were through the roof and the landlord insisted were through the walls.[1] The tenant withheld rent payments after the tenth month of the fourth year of the lease, and he abandoned the premises early in the fifth year.
The trial court found that the leak was through the roof and that the landlord’s failure to repair would have constituted a constructive eviction, excusing the tenant from further rental payments, but for the tenant’s failure to abandon the premises within a reasonable time. Taking the record as a whole, we find substantial competent evidence supporting the trial court’s decision that the tenant’s failure for four years to abandon the premises, on account of conditions by which he claimed he was constructively evicted, vitiated any privilege he may have had to abandon the premises as unhabitable and thus end his liability for rent. We therefore affirm.
The trial court’s judgment states:
The leaking roof was of such a serious nature that it indeed constituted a constructive eviction, however, the Defendant (Bass), in order to take advantage of such constructive eviction, should have vacated the premises promptly, but rather chose to remain on the premises for a period of more than four (4) years.
The well-worn principle on which this judgment rests is as stated in Richards v. Dodge, 150 So.2d 477, 481 (Fla. 2d DCA 1963):
Generally, abandonment of the premises within a reasonable time after the landlord’s wrongful act is a necessary element of constructive eviction. See 32 Am.Jur., Landlord and Tenant, §§ 245-264 (1955); 52 C.J.S. Landlord and Tenant §§ 455-459 (1947); Annot. 75 A.L.R. 1114 (1931).
In other words, a tenant who too long tolerates intolerable conditions in a leased building loses his privilege not to tolerate them any longer, so that, quitting the premises at *706 last, he remains liable for rent to the end of the term. This doctrine is not to be applied uncritically, for there is a degree of perversity in denying the tenant relief when the money in issue is future rent for a vacated and substantially unhabitable building, not past rent due for time the tenant remained in possession. Why, in those circumstances, should the landlord be rewarded for the persistence of his fault and the tenant penalized for the steadiness of his patience?
The crusty rationale of early decisions was that, as a leasehold is an estate in land which one takes for the value of the land’s produce, and only incidentally for the use of a building,[2] the landlord’s covenant concerning the building’s condition and the tenant’s covenant to pay rent are independent of each other;[3] therefore the tenant’s obligation is to pay rent until he is evicted; and while the landlord may evict a tenant “constructively,” by refusing to remedy intolerable leasehold conditions, as surely as by “actual expulsion”,[4] a tenant who remains in possession cannot logically be regarded as constructively evicted.[5] Therefore the tenant’s continued habitation, after cause for abandonment occurs, constitutes “waiver of the right of abandonment,"[6] or, as stated more pragmatically, the tenant’s continued habitation “negatives any inference that the conduct complained of was of so serious a character as to amount to a constructive eviction.” [7]
The waiver rule has been roundly criticized as having little justification beyond its appropriateness to a dryly logical formula which holds that, as there can be no end to rentals without an eviction, there was no eviction if rentals were thereafter paid. Obviously, the waiver rule as so stated requires the tenant to abandon at his peril, after calculating both whether and when the premises have become intolerable due to the landlord’s fault.[8] For any miscalcula *707 tion — if in law the premises are not yet intolerable, or were long ago as intolerable as now, or are not intolerable but merely inconvenient, or not intolerable at the landlord’s fault — the tenant’s penalty is the same: he is both on the street and liable for rent to the end of the term. The harshness of the constructive eviction doctrine and its waiver corollary is especially evident in the tenancies of poor urban families who have few or no alternatives for a home,[9] The doctrine also burdens commercial leaseholds, since an aggrieved tenant is put to a choice between moving his business, thereby risking new capital and forfeiting all customer goodwill associated with his present location, and remaining in possession of the premises, thereby waiving the right to assert a constructive eviction.[10] Though the tenant may retain a right of action for damages, or a setoff against rentals for damages resulting from the landlord’s default,[11] damages may be difficult to prove[12] and an incomplete substitute for the lost privilege of quitting the unhabi-table tenancy.
The Florida Residential Landlord and Tenant Act[13] softens the waiver rule and dispenses with constructive eviction as a *708 rationale for deciding disputes over residential tenancies. Where there is no statutory relief, exceptions to the waiver rule have been created-by the courts. A tenant who does not promptly abandon the unhabitable premises may nevertheless be excused, and his future rent abated, if the objectionable condition became more aggravated or produced a cumulative effect during the tenant’s continued possession,[14] or if the tenant relied for a time on the landlord’s promise to remedy the situation,[15] or if he was mollified by landlord attempts to repair,[16] or if the cost of acquiring new quarters is so prohibitive as to preclude any real choice between abandoning or retaining possession.[17] But those exceptions do not reach this case. Here, the leaks did not grow worse during the tenant’s four-year occupancy and they did not have a cumulative deleterious effect on the tenancy, which must be distinguished from the tenant’s patience. Here, the landlord refused to repair and indeed insisted, even to the date of trial, that the leaks were through the wall and therefore not his responsibility.
We affirm the circuit court’s judgment in this case because we recognize that the waiver rule, for all its rigidity in times past, has current value in testing subjective and problematic claims of unhabitability and in expressing the ultimate conclusion of the trier of fact that, under all the circumstances, it was unreasonable for a tenant to have *709 lived so long with a condition he considers so intolerable as to justify abandoning the leasehold. We affirm the judgment for rent, not because the waiver rule must necessarily bar all tardy defenses of constructive eviction, but because the following circumstances may properly have persuaded the trier of fact that the defense of constructive eviction should be rejected in this case: the four year delay after the assumed cause for abandonment arose; the tenant’s failure during his possession to show the landlord a reliable independent opinion about the source of the leaks; the uncontra-dicted evidence that the tenant told the landlord his restaurant was losing money; the tenant’s failure to reestablish his restaurant elsewhere, or even consider an alternative site; and the tenant’s apparent poor health at the time he quit the premises.
AFFIRMED.
MILLS, C. J., and ERVIN, J., concur.

. The tenant, whose testimony the trial court evidently accepted, testified he “told Mr. Wol-litz [the landlord] and showed him where it was coming from and he didn’t want to believe it. He said it was coming through the wall and wanted me to fix it. I said, ‘It’s not my responsibility because it’s coming from the roof

. See 1 Tiffany, Landlord and Tenant, section 16 (1910).

. Restatement of Contracts, Section 290 (1932). In Masser v. London Operating Co., 106 Fla. 474, 498, 145 So. 79, 83 (1932), the Court stated, quoting a treatise:
The landlord’s covenant to repair and the tenant’s to pay rent are independent covenants, and at common law a breach of the former is no defense to an action on the latter.
See generally, Rapacz, Origin and Evolution of Constructive Eviction in the United States, 1 DePaul L.Rev. 69 (1951).

. Edgerton v. Page, 20 N.Y. 281, 284 (1859), was one of the first American decisions to develop the constructive eviction doctrine:
Such act of the lessor, accompanied by an abandonment of possession by the lessee, is deemed a virtual expulsion of the tenant, and, equally with an actual expulsion, bars the recovery of rent. The reason of the rule is, that the tenant has been deprived of the enjoyment of the demised premises by the wrongful act of the landlord; and thus the consideration of his agreement to pay rent has failed. . .
The Florida Supreme Court recognized the availability of the constructive eviction defense in Hankins v. Smith, 103 Fla. 892, 138 So. 494 (1931).

. Two Rector Street Corp. v. Bein, 226 A.D. 73, 76, 234 N.Y.S. 409, 412 (1st Dept. 1929):
A necessary element of a constructive eviction is a surrender by the tenant of the demised premises. A tenant cannot claim un-habitability, and at the same time continue to inhabit. .

. Barrett v. Boddie, 158 Ill. 479, 484, 42 N.E. 143, 144 (1895):
Possession retained after an alleged constructive eviction is a waiver of the right of abandonment.
2 McAdam, Landlord and Tenant (3 ed. 1900), section 404 at p. 1293:
Certain acts of the landlord causing a diminution of beneficial enjoyment when sufficient to justify the tenant in leaving the premises may be turned by him into an eviction by so doing, but the tenant may waive the eviction by neglecting to abandon the premises.
See Annot., 91 A.L.R.2d 638 (1963) (time within which a tenant must abandon premises to preserve constructive eviction.)

. Chelton Avenue Bldg. Corp. v. Mayer, 316 Pa. 228, 232, 172 A. 675, 677 (1934).

. In Lemle v. Breeden, 51 Haw. 426, 435, 462 P.2d 470, 475, 40 A.L.R.3d 637, 644 (1969), the Hawaii Supreme Court discussed the dilemma faced by tenants who rely on a constructive eviction defense:
Abandonment is always at the risk of establishing sufficient facts to constitute constructive eviction or the tenant will be liable for breach of the rental agreement. Also the tenant is forced to gamble on the time factor *707 as he must abandon within a “reasonable” time or be deemed to have “waived” the defects.

. Restatement (Second) of Property, section 6.1, Comment h, Reporter’s Note at p. 234 (1977):
This [constructive eviction waiver] doctrine has been widely criticized on the grounds that it makes the law completely unavailable to tenants who for one reason or another cannot move, e. g., indigent urban apartment dwellers in many cities, and available only at great risk to others who must first deprive themselves of such benefit as they are deriving from the premises before getting a ruling on whether they were justified in doing so.
See generally, Note, The Indigent Tenant and the Doctrine of Constructive Eviction, 1968 Wash.U.L.Q. 461.

. Reste Realty Corp. v. Cooper, 53 N.J. 444, 461, 251 A.2d 268, 277 (1969) aptly described the quandary of a commercial lessee confronted with the choice of vacating the premises or waiving his constructive eviction claim:
What constitutes a reasonable time [within which to surrender the premises] depends upon the circumstances of each case. In considering the problem courts must be sympathetic toward the tenant’s plight. Vacation of the premises is a drastic course and must be taken at his peril. If he vacates, and it is held at a later time in a suit for rent for the unexpired term that the landlord’s course of action did not reach the dimensions of constructive eviction, a substantial liability may be imposed upon him. That risk and the practical inconvenience and difficulties attendant upon finding and moving to suitable quarters counsel caution.
See also, Greenstein v. Conradi, 161 Minn. 234, 235, 201 N.W. 602 (1924), where the commercial tenant stayed in possession 2 months after insufficient heat became apparent:
The defendant [tenant] had some sort of business established. Moving meant expense and possible loss and involved the necessity of securing a suitable new location. He could tolerate for awhile an uncomfortable condition, of which he complained and which could be remedied by his lessor, without being charged as a matter of law with a waiver of his right to claim a constructive eviction.

. Masser v. London Operating Co., 106 Fla. 474, 499-500, 145 So. 79, 84 (1932), where the court stated:
The tenants themselves had a right, after waiting a reasonable time after notice to the lessor, to make the necessary repairs and deduct the expense thereof from the rent, or, in an action for the rent, to set-off or recoup his damages resulting from the landlord’s breach of his covenant, or to leave the premises unrepaired and sue the lessor for the damages they may have sustained from the lessor’s failure to repair.
See, e. g., Rosen v. Needelman, 83 So.2d 113 (Fla.1955); Berwick Corp. v. Kleinginna Investment Corp., 143 So.2d 684 (Fla. 3d DCA 1962) (court affirmed refund of tenant’s security deposit after constructive eviction).

. Responding to the cross-examiner’s question, “[D]id you lose business, to your knowledge, as a result of this water problem?”, appellant testified:
I couldn’t go so far as [to] say, that . . I mean, ... I couldn’t say that and tell the truth. I’m sure I have, but I couldn’t say it and tell the truth.

. Section 83.56(5), Florida Statutes (1979):
[I]f the tenant pays rent with actual knowledge of a noncompliance by the landlord or accepts performance by the landlord of any other provision of the rental agreement that is at variance with its provisions, the . tenant waives his right to terminate the rental agreement . . ., but not for any subsequent or continuing noncompliance.

. Ralston, Inc. v. Miller, 357 So.2d 1066 (Fla. 3d DCA 1978) (tenant’s continued possession of premises while leaking roof worsened did not constitute waiver); Marks v. Dellaglio, 56 A.D. 299, 67 N.Y.S. 736 (1st Dept. 1900) (tenant complained of offensive odors on premises; “increasing effect” of odors negated landlord’s contention of tenant waiver); Batterman v. Levenson, 102 Misc. 92, 168 N.Y.S. 197 (Sup.Ct.App. Term 1917) (no waiver where rats on premises became more numerous during tenant’s continued possession); 1 American Law of Property, Section 3.51 (A.J. Casner ed. 1952).

. 3 Thompson on Real Property, section 1132 (Grimes Replacement 1959); Thirteenth and Washington Sts. Corp. v. Nelsen, 123 Utah 70, 79, 254 P.2d 847, 852 (1953):
It is true that the troubles as to most of the defects complained of continued practically through the length of defendants’ occupation and that during both winters defendants had heating problems but did not move out until early summer when such problems would not exist. However, repeated complaints were followed by promises from plaintiff’s agents that the conditions would be improved. Defendants were justified in waiting to see if the promises would be fulfilled
Johansen v. Arizona Hotel, 37 Ariz. 166, 173-174, 291 P. 1005, 1008 (1930),
The great weight of authority is to the effect that in order to rely upon this defense [constructive eviction] the defendant [tenant] must abandon the premises within a reasonable time, or the right to claim such an eviction will be waived. However, where the evil complained of was capable of being remedied by the landlord, who promised defendant that he would remedy it, the defendant had the right to rely upon such promise and remain in possession. .
Hartenbauer v. Brumbaugh, 220 Ill.App. 326 (1920) (tenant did not waive constructive eviction by remaining in apartment house used by another tenant for prostitution, because landlord’s agent promised to remedy the situation); Westland Housing Corp. v. Scott, 312 Mass. 375, 44 N.E.2d 959 (1942) (no waiver where landlord promised to stop soot and smoke from oil burner, because landlord promised to but did not adequately repair).

. In Aro Glass and Upholstery Co. v. Munson-Smith Motors, Inc., 12 Wash.App. 6, 10, 528 P.2d 502, 506 (1974), the Washington Court of Appeals excused the tenant’s continued possession of the premises, stating:
In the case at bench, the landlord had ample opportunity to correct the situation — and indeed, made several unsatisfactory attempts to correct the situation. Clearly, also, Mun-son-Smith [tenant] continually pursued its requests and demands that corrective action be taken. Under that state of the facts the lessee cannot be said to have waived the right to assert constructive eviction as a defense to the action for rent.
Hancock Construction Co. v. Bassinger, 198 N.Y.S. 614 (Sup.Ct. App. Term 1923) (no waiver where tenant relied on landlord’s efforts to rid premises of vermin).

. Thirteenth and Washington Streets Corp. v. Nelsen, supra note 15 (serious lack of suitable office space caused tenant’s continued possession; court held tenant did not wait an unreasonable time before vacating); Majen Realty Corp. v. Glotzer, 61 N.Y.S.2d 195 (Mun.Ct. Bronx 1946) (court noted critical housing shortage in post World War II New York City, excused tenant’s continued possession of a portion of the fire-damaged premises).