[No. 14234–8–I.   Division One.   June 23, 1986.]

BURNS N. TALLMAN, ET AL, *Respondents,* v. ROBERT E. DURUSSEL, *Appellant.*

*Clinton Hattrup,* for appellant.

*James F. McAteer* and *Lenihan, Ivers & McAteer, P.S.,* for respondents.

RINGOLD, A.C.J.—Robert Durussel appeals a summary judgment holding him liable for principal and interest due on a promissory note payable to Burns Tallman. The facts are not in dispute.

Appellant Durussel entered into an agreement with respondent Tallman, to purchase 25 percent of the common stock of Tallman Machinery Company for $50,000. As part of this transaction, Durussel paid cash in the amount of $21,784.78 and on August 15, 1981, signed a promissory note in the sum of $28,215.22. Payments of $750 were to be made every month until the note was paid.

Seven months later, the corporation "went bankrupt". On April 1, 1982, Durussel commenced an action against Tallman and his wife for rescission of the contract of sale alleging a violation of the Securities Act of Washington, RCW 21.20, common law fraud and misrepresentation. Tallman filed his answer on June 1, 1982, at a time when six installments of $750 each were delinquent on the note.

On April 10, 1983, over a year after the filing of the initial suit, Durussel amended his complaint asserting addi-

tional facts without asserting a new cause of action. Tallman served a general answer to Durussel's amended complaint on April 13, 1983, when 17 installments on the note were delinquent. Though the promissory note provided "If any of said installments are not so paid, the whole sum of principal and interest shall become due and payable at once, without further notice, at the option of the holder," Tallman did not interpose any counterclaim on the indebtedness owing under the promissory note in either answer.

A jury found in favor of Tallman and dismissed Durussel's claims.

On October 25, 1983, Tallman instituted this action against Durussel for the entire balance due on the promissory note. Durussel filed a motion for summary judgment on November 8, 1983, alleging that the suit was barred by the doctrine of res judicata because Tallman's cause of action on the note was a compulsory counterclaim that he failed to assert in the prior action. On November 15, 1983, Tallman also sought summary judgment arguing that while the installments due prior to the filing of his original answer on June 1, 1982, constituted compulsory counterclaims that were barred, the installments that came due thereafter were not.

The court denied Durussel's motion, but granted a partial summary judgment in favor of Tallman. The court held that while Tallman was not required to accelerate the whole principal and interest due, he was required to file a compulsory counterclaim for all installment payments that were delinquent at the time he served his answer to the amended complaint in the prior suit. Accordingly, Tallman was awarded judgment for the entire principal due plus prejudgment interest minus an offset of $12,750 representing the 17 installments that Tallman failed to assert as compulsory counterclaims when he filed his answer on April 13, 1983.

Durussel appeals and Tallman cross–appeals.

COMPULSORY COUNTERCLAIMS

CR 13(a) states:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court *cannot acquire jurisdiction.* But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this rule.

Durussel maintains that the promissory note was logically related to the prior lawsuit for rescission of the sales contract between himself and Tallman. At the time Tallman served his answer, the only fact necessary to support a cause of action on the entire note had occurred (*i.e.,* Durussel had defaulted). Durussel argues that to allow litigation of this claim would violate the purpose of CR 13(a) which is to prevent multiplicity of litigation and foster prompt resolution of all disputes arising from common matters.

██ Durussel's contention is without merit. CR 13(e) states that:

A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.

More simply, "a counterclaim otherwise compulsory would not have to be made by a defendant if the claim had not matured at the time the defendant served his answer." Meisenholder, *The Effect of Proposed Rules 7 Through 25 on Present Washington Procedures: Part II,* 32 Wash. L. Rev. 336, 342 (1957); 3A L. Orland, Wash. Prac. § 5164, at 225–26 (3d ed. 1980).

██ In *A.A.C. Corp. v. Reed,* 73 Wn.2d 612, 615, 440 P.2d

465 (1968), the Supreme Court stated:

> The law is settled in this jurisdiction that even if the provision in an installment note provides for the automatic acceleration of the due date upon default, mere default alone will not accelerate the note. A fortiori, the same result occurs when the note may be accelerated only at the option of the holder.
>
> Thus it is plain that this court is fully committed to the doctrine . . . that mere default in payment does not mature the whole debt—whether there be words of option in the agreement or not. Such a provision hastening the date of maturity of the whole debt is for the benefit of the payee, and if he does not manifest any intention to claim it, before tender is actually made, there is in law no default such as will cause the maturity of the debt before the regular time provided in the agreement.

(Citations omitted.)

Since default alone is insufficient to accelerate the note and Tallman did not exercise his option to accelerate, the trial court was correct in holding that a cause of action on the note was not entirely barred by CR 13(a).[1] We must now consider whether the court erred in concluding that Tallman could not obtain a judgment on those installments that came due after the filing of his original answer but before serving his answer to the amended complaint.

### THE RELATION BACK DOCTRINE

Tallman admits that he should be barred from obtaining judgment on the six installments that were in default when he filed his initial answer on June 1, 1982. He argues, how-

---

[1]Though *Olawsky v. Clausen,* 87 S.D. 578, 212 N.W.2d 653 (1973), cited by Tallman, appears to be on point, it is not clear whether an acceleration clause was involved in that case. The court merely refers to a judgment being granted for the full "balance due under the contract." *Olawsky,* at 579. Though an acceleration clause was likely involved, "full balance due" could also be interpreted to mean those installments in default to date. We also note *Denbina v. Hurst,* 516 S.W.2d 460 (Tex. Civ. App. 1974). In that case, the court went so far as to preserve a claim otherwise barred by the compulsory counterclaim rule by holding that an obligee could revoke his option to accelerate payment and still preserve his right to bring a later action on the note absent some objection by the maker.

ever, that application of the relation back doctrine should allow him to obtain judgment on the other 11 installments that fell in default between June 1, 1982, and the serving of his amended answer on April 13, 1983.

CR 15(c) states in pertinent part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Tallman raises a novel question for which our research has failed to provide an adequate answer. The issue therefore should be resolved consistently with the fundamental policies underlying the applicable rules.

▌ Basically, two civil rules are at odds in this case. CR 13(a) requires compulsory counterclaims to be pleaded or waived. The purpose of the rule is "the forcing of joinder of logically related claims". Trautman, *Joinder of Claims and Parties in Washington,* 14 Gonz. L. Rev. 103, 105 (1978). The objective of the rule is the same as its identical federal counterpart[2]—"to provide complete relief to the parties, to conserve judicial resources and to avoid the proliferation of lawsuits." *Montecatini Edison, S.P.A. v. Ziegler,* 486 F.2d 1279, 1282 (D.C. Cir. 1973); *see also Southern Constr. Co. v. Pickard,* 371 U.S. 57, 60, 9 L. Ed. 2d 31, 83 S. Ct. 108 (1962); *Aldens, Inc. v. Packel,* 524 F.2d 38, 51 (3d Cir. 1975); *Columbia Plaza Corp. v. Security Nat'l Bank,* 525 F.2d 620, 626 (D.C. Cir. 1975); 6 C. Wright & A. Miller, *Federal Practice* § 1403 (1971).

▌ The purpose of CR 15(c), on the other hand, is to ameliorate the harsh effect of the statute of limitations. *See North St. Ass'n v. Olympia,* 96 Wn.2d 359, 368, 635 P.2d 721 (1981); *Miller v. Issaquah Corp.,* 33 Wn. App. 641, 646, 657 P.2d 334 (1983); *see also Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir. 1983); *Korkow v. General*

---

[2]Where a state and federal rule are identical, we may look to decisions and analysis of the federal rule for guidance. *American Discount Corp. v. Saratoga West, Inc.,* 81 Wn.2d 34, 37, 499 P.2d 869 (1972).

*Cas. Co.,* 117 Wis. 2d 187, 344 N.W.2d 108, 113 (1984) (construing an identical state rule); 6 C. Wright & A. Miller, § 1497. The rule "ensure[s] that the statute of limitations is not used mechanically to prevent adjudication of claims where a real party in interest was sufficiently alerted to the proceedings, or was involved in them in a practical sense from an early stage." *Hampton v. Hanrahan,* 522 F. Supp. 140, 145 (N.D. Ill. 1981), *overruled on other grounds in Moore v. Floro,* 614 F. Supp. 328, 332 (N.D. Ill. 1985); *see also Besig v. Dolphin Boating & Swimming Club,* 683 F.2d 1271, 1278 (9th Cir. 1982). The justification for the rule is "that once litigation has been instituted, a party should not be entitled to the protection of the statute of limitations against the later assertion of a claim or defense arising out of the same conduct, transaction or occurrence already in dispute." *Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 738 (9th Cir. 1982); *Rohm & Haas Co. v. Dawson Chem. Co.,* 557 F. Supp. 739, 825 (S.D. Tex. 1983); *Davis v. Potomac Elec. Power Co.,* 449 A.2d 278, 281 (D.C. 1982); *Welch v. Bancorp Management Advisors, Inc.,* 296 Or. 208, 675 P.2d 172, 181 (1983) (construing identical state rule); 6 C. Wright & A. Miller, § 1496.

█ Viewing Tallman's argument in light of the purposes of these two rules, the court was correct in holding that Tallman was barred from recovering the installments that were in default at the time he served his amended answer. This result fulfills the purpose of CR 13(a) by making litigation more economical without adversely affecting the ability of CR 15(c) to preserve claims from statute of limitations defenses. Adoption of Tallman's view would undermine CR 13(a) without conferring any corresponding benefit to CR 15(c) in its effort to ameliorate the harsh effect of the statute of limitations.[3]

---

[3]The statute of limitations is not at issue in this case. Even if it were, the general view is that "'the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.'" *Burlington Indus., Inc. v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir. 1982), quoting 6 C. Wright & A. Miller, § 1419.

In sum, Tallman is attempting to utilize CR 15(c) for a purpose that was not intended—to defeat the requirements of CR 13(a). In *Solo Cup Co. v. Paper Mach. Corp.,* 359 F.2d 754 (7th Cir. 1966), the court was faced with an analogous problem. The plaintiff sued a Wisconsin corporation. Later, after the corporation's president had moved from the state, the plaintiff amended his complaint and tried to apply the relation back doctrine to obtain personal jurisdiction in Wisconsin over the former president. The court held that personal jurisdiction could not be obtained by relating back an amended complaint to the original complaint when the individual was not originally named as a defendant. *Solo Cup,* at 758. Similarly, this court refuses to allow Tallman to defeat the purpose of CR 13(a) by utilizing CR 15(c) in a manner for which it was not intended.

CALCULATION OF JUDGMENT

The trial court entered judgment in the principal amount of $26,587.91, which represented the balance due on the note at the time of Durussel's last payment. Interest of 26 percent was computed on the basis of that amount and added to the principal. An offset of $12,750 was then deducted representing the 17 installments of $750 each that Tallman failed to assert as a compulsory counterclaim. Durussel contends this calculation is erroneous. He argues that the calculation allowed Tallman to obtain prejudgment interest on claims that were barred by the compulsory counterclaim rule.

The computations of the trial court are difficult to decipher, but it appears that the court confused the award of principal and interest. The court then tried to compensate by deducting the total of the 17 installments barred by the compulsory counterclaim rule. Without delving into the mathematics of how this computation leads to incorrect results, it should suffice to state that the trial court failed to adequately *separate* the computations of principal and interest. Since the judgment was computed on an erroneous basis, it must be recomputed.

The note states that it will bear interest at a rate of 12 percent per annum after failure to pay any installments, so an amortization schedule should be computed at a rate of 12 percent starting at the date of Durussel's first default (December 5, 1981). The judgment should then consist of the principal balance due on April 5, 1983, plus interest commencing at that date minus credit given for the installments due between December 5, 1981, and April 5, 1983, that are barred by the compulsory counterclaim rule.

## ATTORNEY'S FEES

Since each party has prevailed on a major issue, there is no "prevailing party" under RCW 4.84.330. Accordingly, each party should bear the expense of his own attorney's fees. *Cf. McGary v. Westlake Investors,* 99 Wn.2d 280, 288, 661 P.2d 971 (1983); *Oneal v. Colton Consol. Sch. Dist. 306,* 16 Wn. App. 488, 493, 557 P.2d 11 (1976).

The judgment is modified and the cause remanded solely for the purpose of recomputation of the judgment awarded.

WILLIAMS, J., and REVELLE, J. Pro Tem., concur.

Review denied by Supreme Court September 2, 1986.