*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2015 UT 27**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

———————

COTTAGE CAPITAL, LLC,
*Appellant,*

*v.*

RED LEDGES LAND DEVELOPMENT,
*Appellee.*

———————

No. 20130320
Filed January 30, 2015

———————

Fourth District, Heber Dep't
The Honorable Derek P. Pullan
No. 120500114

———————

Attorneys:

Karthik Nadesan, Salt Lake City, for appellant

Brent O. Hatch, Mitchell A. Stephens, Salt Lake City,
for appellee

———————

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

———————

JUSTICE LEE, opinion of the Court:

¶1 This is an appeal from an order dismissing an action brought by Cottage Capital, LLC, to enforce a guaranty agreement against Red Ledges Land Development. The district court dismissed this action on grounds of preclusion, concluding that it should have been asserted as a compulsory counterclaim in an earlier suit between the parties. We reverse. We interpret rule 13(a) of our rules of civil procedure not to extend to a counter-

claim that has not yet matured at the time of a civil proceeding. And because we cannot conclude that Cottage Capital's enforcement claim had matured at the time of the earlier proceedings between the parties, we hold that rule 13(a) was not implicated and thus that this claim was not precluded.

I

¶2   On May 5, 2008, Cottage Capital loaned GC Pacific just over one million dollars and memorialized the debt in a promissory note. On the same day, Cottage Capital also executed an agreement with Red Ledges, in which Red Ledges guaranteed GC Pacific's repayment obligations under the promissory note. The guaranty agreement provides that upon GC Pacific's default, Cottage Capital had the option of collecting the debt from Red Ledges instead. The relevant portion of the guaranty agreement is as follows:

> Upon any default by BORROWER in the full and prompt payment and performance of any of the OBLIGATIONS, the liabilities and OBLIGATIONS of GUARANTOR hereunder shall at the option of the LENDER, become forthwith due and payable to the LENDER without demand or notice of any nature, such demand or notice being expressly waived by GUARANTOR.

¶3   GC Pacific and Cottage Capital negotiated several extensions on the debt, but GC Pacific became delinquent on its payments in or about May 2009. Instead of immediately turning to the guaranty agreement and asking Red Ledges to satisfy the debt, however, Cottage Capital continued to negotiate with GC Pacific directly for repayment.

¶4   During the course of these negotiations, on March 15, 2011, Red Ledges filed a declaratory judgment action in the district court. That action sought a declaration that the guaranty was unenforceable and that Red Ledges should be released from all of its obligations thereunder. Red Ledges' declaratory judgment claim was based on its assertions that the interest rate in the guaranty was unconscionable, that Cottage Capital had failed to provide Red Ledges with ongoing information about the status of GC Pacific's payments on the loan, that Cottage Capital and GC Pacific had conspired to modify the terms of the guaranty to increase Red

Ledges' liability, and that Cottage Capital had breached the guaranty agreement. In its answer to the declaratory judgment action, Cottage Capital defended against Red Ledges' allegations, but did not assert any affirmative counterclaims.

¶5   On June 4, 2012, the district court granted summary judgment in favor of Cottage Capital on all counts. It held that the interest rate was not unconscionable, that Cottage Capital had no duty to provide Red Ledges with ongoing information about the loan, that Cottage Capital was authorized by the guaranty to modify the terms of the note, and that Red Ledges had failed to establish any breach of contract or conspiracy.[1] Red Ledges did not appeal that decision.

¶6   At the time of the declaratory judgment action, the parties appear to have understood that GC Pacific was still in a position to repay its debt, and thus that enforcement of the guaranty agreement might not be necessary. Red Ledges represented to the district court that at the time the declaratory judgment action was initially filed, "it was unclear whether [GC Pacific] would be able to fully satisfy its debt to Cottage Capital." But during the course of the action, Red Ledges "learned of the increased likelihood that Cottage Capital will be paid in full by GC Pacific," and accordingly filed a motion to toll the proceedings.

¶7   Negotiations with GC Pacific eventually broke down, however, and Cottage Capital sought repayment from Red Ledges instead. On June 12, 2012, it delivered notice to GC Pacific and Red Ledges that it was declaring all amounts due and payable from

---

[1] In its ruling, the district court appears to have anticipated that a future enforcement action might be filed:

> At no time in this action did Cottage Capital seek to compel Red Ledges to comply with Red Ledges' obligations under the decree. Rather, Cottage Capital successfully defended against Red Ledges' claims that the Guaranty was void. The effect of the judgment in this case will be to limit Red Ledges' defenses in any future enforcement action. However, this does not transform the case into an action to compel compliance with the Guaranty.

Red Ledges, and asserting that it would file an enforcement action if payment was not received within ten days. Red Ledges failed to pay, and Cottage Capital filed an enforcement action in the district court in September 2012.

¶8    Red Ledges filed a motion to dismiss, alleging that Cottage Capital's claim was precluded under rule 13 of the Utah Rules of Civil Procedure. Red Ledges asserted that Cottage Capital's enforcement claim was a compulsory counterclaim that should have been filed in the declaratory judgment proceeding the prior year. Cottage Capital opposed the motion to dismiss on four grounds: (1) that the enforcement claim had not accrued at the time of the declaratory judgment action; (2) that a provision of the guaranty agreement waiving Red Ledges' contract defenses foreclosed the compulsory counterclaim defense; (3) that there is a declaratory judgment exception to the compulsory counterclaim rule; and (4) that the claim was not compulsory because it was not logically related to Red Ledges' claims in the declaratory judgment action.

¶9    The district court granted the motion, dismissing Cottage Capital's enforcement action with prejudice. In so doing, the court rejected all of Cottage Capital's defenses. Of particular importance to this appeal, it held that the enforcement claim "accrued without demand when GC Pacific went into default in May 2009," two years before the declaratory judgment action was filed. And from that premise the district court proceeded to conclude that the enforcement action was precluded as a compulsory counterclaim, holding that it arose out of the "same transaction or occurrence" as the declaratory judgment action, that there could be no waiver of the preclusive effect of rule 13(a), and that any declaratory judgment exception did not apply.

¶10 Cottage Capital filed this appeal, which we retained under Utah Code section 78A-3-102(3)(j). Cottage Capital's arguments for reversal are the same grounds it pressed in opposition to the motion to dismiss in the district court. Our review of the order of dismissal is de novo; we afford no deference to the district court's judgment. *Maxfield v. Herbert*, 2012 UT 44, ¶ 11, 284 P.3d 647 ("We review [a] district court's decision to grant [a] 12(b)(6) motion for correctness.").

II

¶11 The principal question presented concerns the applicability of civil rule 13(a) to the enforcement claim asserted by Cottage Capital against Red Ledges. Cottage Capital challenges the applicability of rule 13(a) on various grounds. We reach only one of them—the first—because we find it sufficient to sustain the viability of its claim and thus to require reversal of the district court's judgment of dismissal.

¶12 Under civil rule 13(a), a pleading must "state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim." UTAH R. CIV. P. 13(a) (emphasis added). As the highlighted terms indicate, a counterclaim cannot be compulsory unless it is extant—i.e., matured or accrued—"at the time" of the relevant pleading. That point is emphasized by the parallel terms of rule 13(d), which designates as permissive counterclaims those "maturing or acquired after pleading." *Id.* 13(d).[2]

¶13 The key question is accordingly whether Cottage Capital's claim had accrued at the time of the pleading in the declaratory judgment proceeding between the parties. In resolving that question on a motion to dismiss, we accept the facts as alleged by Cottage Capital, together with all reasonable inferences to be drawn therefrom. *See Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. And under that standard, we reverse the decision granting the motion to dismiss, holding that there is at least a reasonable basis for concluding that Cottage Capital's claim had not accrued at the time of the pleading in the underlying declaratory judgment proceeding.

¶14 Under the express terms of the guaranty, Red Ledges' obligation did not become enforceable until Cottage Capital's option to exercise the guaranty had been exercised. Specifically, payment was due and payable from Red Ledges only "at the option of the lender." And that option, bargained for by the parties, gave Cottage Capital the discretion to decide when to give up on recover-

---

[2] *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1411, at 89 (3d. ed. 2010) (explaining that under the terms of the parallel federal rule, a "party need not assert a counterclaim that has not matured at the time the party serves a pleading")

ing the debt from GC Pacific and declare Red Ledges' obligation due and payable. Until that happened, Cottage Capital's enforcement action was not mature and could not be asserted. *See O'Hair v. Kounalis*, 463 P.2d 799, 800 (Utah 1970) ("Ordinarily, a cause of action for a debt begins to run when the debt is due and payable because at that time an action can be maintained to enforce it.").

¶15 Under the facts as alleged by Cottage Capital, and giving it the benefit of reasonable inferences in its favor, we cannot conclude that Cottage Capital's enforcement claim had accrued at the time of the pleadings in the declaratory judgment suit. It is at least reasonable to infer that Cottage Capital had not exercised its option until after that suit had been dismissed and Cottage Capital had given up on collecting directly from GC Pacific. And in light of that inference, we hold that Red Ledges' motion to dismiss was not well-founded, as there was at least a reasonable basis for concluding that Cottage Capital's claim was not a compulsory counterclaim under the terms of civil rule 13(a).[3]

¶16 Red Ledges' contrary position is rooted in its assertion that the Cottage Capital enforcement claim accrued earlier—at the time that GC Pacific defaulted in May 2009. In support of this position, Red Ledges notes, as did the district court, that the terms of the guaranty allowed Cottage Capital to declare the debt due and payable "without demand or notice of any nature, such demand

---

[3] In so concluding, we do not foreclose the possibility that Red Ledges could succeed in proving otherwise in further proceedings on remand. Thus, we do not foreclose Red Ledges' argument that Cottage Capital may have effectively exercised its option by its assertion of an affirmative defense in the declaratory judgment action—a defense based on the allegation that Red Ledges' declaratory judgment claims were "barred by its own breaches of contract." That position may eventually succeed upon discovery and further argument on remand, as one reading of the affirmative defense is as an allegation that Red Ledges had breached the terms of the guaranty by nonpayment (and nonpayment could have constituted a breach only if Cottage Capital had exercised its option under the guaranty). But the question before us on appeal is the viability of the district court's decision granting Red Ledges' motion to dismiss. And in considering the viability of that motion, we must yield all reasonable inferences to Cottage Capital.

or notice being expressly waived by GUARANTOR." In addition, Red Ledges also marshals non-binding case citations from other jurisdictions, purportedly demonstrating overwhelming judicial support for its position in other states. We find neither point persuasive.

¶17 First, we do not read the "without demand or notice" clause to override the clear terms of the option clause. Instead we view each clause as independently significant. The option clause preserved Cottage Capital's right to decide when to pursue a claim against Red Ledges as guarantor. And the "without demand or notice" clause did not erase that option. Instead it simply clarified that Cottage Capital was not required to give formal notice or make a formal demand (as is required under the terms of some notes). This provision, in other words, simply contracted away the guarantor's right to defend an enforcement action on the basis of a lack of formal service or demand.

¶18 That is not to say that a claim for enforcement of the guaranty could be asserted in the absence of *any* communication of a notice or demand for payment—since absent even an informal communication, the obligation to pay the guaranty would not accrue, and a breach could accordingly not be established.[4] But our reading of the guaranty does not leave room for the Red Ledges

---

[4] *See, e.g., Beal Bank v. Crystal City Props., Ltd. (In re Crystal Properties, Ltd.)*, 268 F.3d 743, 749 (9th Cir. 2001) ("Both state *and* federal courts have made clear the unquestionable principle that, even when the terms of a note do not require notice or demand as a prerequisite to [exercising an option] to accelerat[e] a note, the holder must take affirmative action to notify the debtor that it intends to accelerate."); *Moss v. McDonald*, 772 P.2d 626, 628 (Colo. App. 1988) ("In the case of an acceleration provision exercisable at the option of the obligee, the obligee must perform some clear, unequivocal affirmative act evidencing his intention to take advantage of the accelerating provision . . . . even though the amount is to become due at the option of the holder 'without demand or notice.'").

view, which improperly construes the parties' contract to take away with one hand what it grants with another.[5]

¶19 Second, we find the cited authority largely inapposite, and in any event insufficient to overcome the clear terms of the guaranty at issue here. Many of the cited cases involve garden-variety loan or mortgage contracts between borrowers and lenders, which are (not surprisingly) deemed breached and enforceable at the time of default.[6] And although other cases involve terms of a guaranty by a third party, they do not generally arise under terms like those at issue here—option terms that clarify that a guarantor's obligation is both separate from the underlying default of the borrower and triggered only by the exercise of the option by the lender.[7]

---

[5] *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 28, 210 P.3d 263 ("In interpreting a contract, we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless.").

[6] *See, e.g.*, *Miss. Valley Title Ins. Co. v. Hardy*, 541 So. 2d 1057, 1059–61 (Ala. 1989); *Wright v. State*, 824 P.2d 718, 722 (Alaska 1992); *Linn v. NationsBank*, 14 S.W.3d 500, 504–05 (Ark. 2000); *Mott v. State*, 49 A.3d 1186, 1188–89 (Del. 2012); *Ellis v. Crockett*, 451 P.2d 814, 821 (Haw. 1969); *Harrington v. Polk Cnty. Fed. Sav. & Loan Ass'n*, 196 N.W.2d 543, 544–46 (Iowa 1972); *KeyBank Nat'l Ass'n v. Sargent*, 758 A.2d 528, 535 (Me. 2000).

[7] *See, e.g.*, *First Nat'l Bank of Ogden v. Taylor*, 114 P. 529, 530 (Utah 1911) (guaranty, with no option clause, deemed enforceable against the guarantor at the time of the borrower's default); *Chevron Chem. Co. v. Mecham*, 536 F. Supp. 1036, 1043 (D. Utah 1982) (same); *Prod. Credit Ass'n of Midlands v. Schmer*, 448 N.W.2d 123, 128 (Neb. 1989) (same). Of the cited cases with any connection to an option, all are distinguishable on their facts; and none of them hold that a claim to enforce an option arises before the option has been exercised. *See Kissell Co. v. Farley*, 417 F.2d 1180, 1184 (7th Cir. 1969) (reversing district court's finding that a contract included an option clause as clearly erroneous, and instead concluding that it was an outright contract to sell); *Kendall Grp. Ltd. v. Fifth Third Bank*, 2010 WL 3821255, at *6 (Ohio Ct. App. Sept. 30, 2010) (real estate purchase contract included an unexercised option to

¶20  At least one of the cases proffered by Red Ledges involves an option clause in line with that at issue here. *See Tallman v. Durussell*, 721 P.2d 985 (Wash. Ct. App. 1986). But the *Tallman* case undermines Red Ledges' position. In *Tallman* a buyer and seller entered into a promissory note that included an optional acceleration clause, allowing the seller to elect to declare the entire amount due and payable in the event of any default. *Id.* at 986–87. The buyer defaulted, and the two engaged in litigation over another issue. *Id.* Later, the seller accelerated the note and brought an enforcement action for the entire balance due. *Id.* The *Tallman* court held that the counterclaim was only partially barred by the compulsory counterclaim rule. It concluded that only the enforcement of the amount due at the time of the previous suit was barred, "[s]ince default alone is insufficient to accelerate the note and [seller] did not exercise his option to accelerate." *Id.* at 988. And it clarified that the amount that would have been due if the lender had exercised its option to accelerate was not a compulsory counterclaim. *Id.* ("Since default alone is insufficient to accelerate the note and Tallman did not exercise his option to accelerate . . . a cause of action on the note was not entirely barred.").

¶21  *Tallman* is consistent with our reading of the option clause at issue here. The Red Ledges guaranty was not automatically triggered at the moment of default. It matured only at Cottage Capital's option. Thus, the Red Ledges guaranty was subject to two preconditions to its enforceability: GC Pacific's default and Cottage Capital's decision to exercise its option to turn to Red Ledges for payment. Red Ledges' construction ignores and overrides the clear terms of the option clause; we reject it on that basis. *See Biesinger v. Behunin*, 584 P.2d 801, 803 (Utah 1978) ("Persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts for the purpose of relieving one side or the other from the effects of a bad bargain.").

¶22  As Red Ledges notes, this construction of the guaranty puts Cottage Capital in control of the timing of Red Ledges' obligation as guarantor. It yields to Cottage Capital the contractual preroga-

---

purchase additional acreage, but did not affect the foreclosure action by bank and subsequent lawsuit by borrower against the bank that was dismissed as a compulsory counterclaim).

tive of choosing whether and when to cease negotiating with GC Pacific and to turn its collection efforts to Red Ledges as the guarantor. The district court was understandably reticent to yield carte blanche authority to a lender, in a manner that might be abused for the purpose of "letting interest accrue at a very high rate" for many years before asserting a claim. And Red Ledges echoes that concern on this appeal.

¶23 We acknowledge this concern, but find it insufficient to foreclose the express authority conferred by the clear terms of the parties' contract—for a couple of reasons. First, as noted above, is the fact that the parties to an arm's-length contract "are entitled to contract on their own terms without the intervention of the courts for the purpose of relieving one side or the other from the effects of a bad bargain." *Id.* And second is the notion, recognized in authority outside of Utah, and which we hereby adopt as the law of this state, that an option clause must be exercised in a reasonable period of time.[8] This is consistent with the longstanding principle of good faith and fair dealing, which requires parties to act in ways that are "consistent with the agreed common purpose and the justified expectations of the other party," *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226 (internal quotation marks omitted), and with the doctrine of laches, which can bar a plaintiff from prevailing where it delays asserting a claim in a way that works to injure the defendant, *Fundamentalist Church of Jesus Christ of Latter-Day Saint v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502.

¶24 This proviso is a sufficient response to the concern for abuse articulated by the district court and echoed by Red Ledges. If a party refused to exercise an option for recourse against a guarantor for an unreasonable period of time in an effort to accumulate interest, its acts would run counter to the general purpose of a guaranty agreement and injure the plaintiff through delay, in

---

[8] *See Malouff v. Midland Fed. Sav. & Loan Ass'n*, 509 P.2d 1240, 1246 (Colo. 1973) (en banc) ("[W]here, as here, no definite time is specified by which the election to accelerate must be exercised, such election to do so must be made within a reasonable time."); *Greene v. Bursey*, 733 So. 2d 1111, 1115 (Fla. Dist. Ct. App. 1999) (statute of limitations does not commence unless lender unreasonably delays demanding payment).

a manner running afoul of the covenant of good faith and fair dealing and the doctrine of laches. And on that basis, a guaranty obligation that remains viable under the terms of a contract could be rendered unenforceable if pressed after an unreasonable delay. No such allegation is or is likely to be made here, however, as both parties acknowledged during the pendency of the declaratory judgment action that it was likely that GC Pacific would still satisfy its own debt, *supra* ¶ 6—a fact suggesting that it was reasonable for Cottage Capital to continue negotiating with GC Pacific instead of turning its sights to Red Ledges. So this is not a case implicating the concern for abusive exercise of an option under a guaranty agreement, and the terms of the agreement must accordingly control.

¶25 We reverse on the basis of the terms of the guaranty as we construe them. And we remand for further proceedings not inconsistent with this opinion.

_____