IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| VOTIV, INC., a Washington corporation, | ) ) ) | No. 78289-4-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| BAY VISTA OWNER LLC, a Delaware limited liability company; BAY VISTA BUILDING ASSOCIATION, a nonprofit association; BAY VISTA BUILDING, a Washington nonprofit corporation; BAY VISTA RESIDENTIAL TOWER ASSOCIATION, a Washington corporation, THE CWD GROUP, INCORPORATED, a Washington corporation; and TATLEY-GRUND, INC., a Washington corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION

FILED: September 16, 2019 |
| Respondents. | ) ) ) | |

VERELLEN, J. — A commercial landlord must fulfill its contractual duties of repair and maintenance in a reasonable manner. When a landlord fulfills its duties unreasonably and interferes with its tenant's use and enjoyment of its leasehold, then it can be liable for the tort of nuisance. If that unreasonable conduct also substantially deprives the tenant of the peaceable use and enjoyment of its leasehold, the landlord can be liable for breaching the covenant of quiet enjoyment as well. Votiv, Inc.'s, lease does not prevent it from suing landlord Bay Vista

Owner LLC (BVO) for nuisance or breach of the covenant of quiet enjoyment. Votiv presented sufficient evidence to defeat summary judgment on its nuisance and covenant of quiet enjoyment claims against BVO.

But Votiv's claim of constructive eviction does not survive summary judgment because Votiv never abandoned its leasehold.

Neither party is entitled to contractual attorney fees under the lease because, at this stage of the proceedings, neither is a "successful party," as required in the lease. And no other party can seek fees under the lease because the lease limits fee requests to the landlord and tenant.

Therefore, we affirm in part, reverse in part, and remand.

## FACTS

Votiv is a music/media company that leases office space in the top floor of the five-story Bay Vista Tower office building.[1] BVO is Votiv's landlord.[2] The 18-story Bay Vista residential tower sits atop one-half of the roof of the office building and uses the other one-half of the office building's roof as a common area recreational space for residential tenants only.[3] The recreational space is open to the sky and contains large plantings, a walking track, a pool, and a tennis court.[4] A waterproofing membrane sits beneath the recreational space and above the

---

[1] Clerk's Papers (CP) at 493.
[2] CP at 233.
[3] CP at 231.
[4] CP at 231, 232, 238.

2

office building's roof to protect the offices from moisture and leaks.[5] The membrane had deteriorated, allowing leaks into the fifth floor.[6] Replacement work began in June of 2017.[7]

Votiv soon complained about disruptions to its work from construction noise and vibrations.[8] Construction occurred primarily during business hours on weekdays. In an attempt to minimize disruptions, some of the noisiest work was scheduled only for weekends.[9] In July, three days after BVO responded to Votiv's complaints, Votiv sued to stop construction.[10] The defendants included BVO; The CWD Group, Inc., which managed the construction project; the Bay Vista Building Association, which is the management organization for decisions affecting both the residential and office portions of the building; the Bay Vista Residential Tower Association, which is the homeowners association for the residential tower; construction company Tatley-Grund, and other parties.[11] The court denied Votiv's request for an injunction.[12]

---

[5] CP at 232-33.
[6] CP at 31, 625, 1255.
[7] CP at 69-70.
[8] CP at 69-70, 350-51.
[9] CP at 142-44.
[10] CP at 3, 106-18, 350-51.
[11] CP at 3-4, 231. Tatley-Grund has since been dismissed as a defendant.
[12] CP at 28-29, 145-46.

Votiv also sought damages from BVO for breach of the lease and damages from all defendants for nuisance.[13] BVO moved for summary judgment on all claims.[14] The court relied exclusively on section 32 of the lease, which allows the landlord to enter the premises to maintain, restore, or improve the premises or the building when the landlord has the right or obligation to maintain, restore or improve. Because section 32 also limits claims against the landlord arising out of the landlord's entry on the premises for those purposes, the trial court granted summary judgment on all claims against all defendants and awarded attorney fees to BVO.[15] The court denied a motion by all other defendants (collectively CWD) for an award of attorney fees under the lease.[16]

Votiv moved for reconsideration. The court denied the motion and awarded BVO attorney fees for responding to the motion to reconsider.[17]

Votiv appeals the grant of summary judgment, denial of its motion for reconsideration, and the awards of attorney fees. CWD cross appeals denial of its request for attorney fees.

## ANALYSIS

We review a grant of summary judgment de novo, performing the same inquiry as the trial court and affirming an order of summary judgment where "'there

---

[13] CP at 9-11.

[14] CP at 217-28.

[15] Report of Proceedings (RP) (Feb. 2, 2018) at 31-32; CP at 653-54.

[16] CP at 1462-64.

[17] CP at 1515-18.

is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law.'"[18] "We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."[19]

If the court grants summary judgment in a contract dispute and there are no disputed material facts and no extrinsic evidence presented on the contract issue, we determine the meaning of the contract as a matter of law.[20] We interpret the contract to give effect to all provisions and not disregard contract terms used by the parties.[21] We give contract terms their ordinary meaning unless the entirety of the contract clearly demonstrates a contrary intent.[22]

Section 32 Limitations on Liability

When analyzing the lease, the trial court applied "the ordinary definition of premises" to section 32 and reasoned that "just like the roof of a house would be part of the building or part of the premises, any space directly above the space that is for lease is also part of [the premises]."[23] Because section 32 limited BVO's

---

[18] Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013) (quoting Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 358, 166 P.3d 667 (2007)).

[19] Id. (citing Qwest Corp., 161 Wn.2d at 358).

[20] Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wn.2d 829, 834, 271 P.3d 850 (2012).

[21] Id. at 840.

[22] Riley v. Iron Gate Self Storage, 198 Wn. App. 692, 700, 395 P.3d 1059 (2017).

[23] RP (Feb. 2, 2018) at 32.

liability, the court concluded it barred Votiv's claims. But this section is inapplicable.

Section 32 of the lease addresses BVO's right of entry into Votiv's office:

> Landlord and its authorized representatives <u>shall have the right to enter the Premises</u> . . . <u>for any of the following purposes</u>: . . . (ii) to do any maintenance; to make any restoration to the Premises or the Building that Landlord has the right or the obligation to perform, and to make any improvements to the Premises or the Building that Landlord deems necessary . . . .
>
> . . . .
>
> Landlord shall not be liable in any manner for any inconvenience, annoyance, disturbance, loss of business, nuisance, or other damage <u>arising out of Landlord's entry on the Premises as provided in this Section</u>, except damage resulting from the grossly negligent or willful acts of Landlord or its authorized representatives. Tenant shall not be entitled to an abatement or reduction of Rent if Landlord exercises any right reserved in this Section. Landlord shall conduct its activities <u>on the Premises</u> as allowed in this section in a reasonable manner so as to cause minimal inconvenience, annoyance or disturbance to Tenant.[24]

Votiv argues, "Section 32 of the lease does not apply to the present case because Votiv's damages are not the result of BVO's entry on the Premises."[25] And section 32 expressly limits BVO's liability only for "damage arising out of Landlord's entry on the Premises."[26] Thus, the issue is whether the structural roof is, as the court concluded, part of the "Premises" defined in the lease.

---

[24] CP at 496 (emphasis added).

[25] Appellant's Reply Br. at 2 (emphasis omitted).

[26] CP at 496.

The lease defines "Premises" as "that certain space . . . located on the fifth (5th) floor of the Building and designated as suite 510."[27] The "Building" is the "Bay Vista Office Building, together with (i) its Allocated Interest in the Common Elements . . . as set forth in the Condominium Declaration."[28] The declaration states improvements to the fifth floor roof are common elements.[29] Those improvements include the waterproof membrane, the concrete topping slab, the roof drainage system, the sun deck, and other structures comprising the roof.[30] The lease's definition of "Premises" is narrow in scope and does not include the structural roof, which is part of the building but not the premises leased to Votiv.

It is BVO's contractual duty to repair the roof. Section (12)(a) defines BVO's maintenance duties: "Landlord shall maintain in good condition and repair the following: (i) the structural parts of the building, which structural parts include . . . subflooring and roof, (ii) the building standard lighting fixtures, window coverings and ceiling tiles . . . ."[31] But section 12 does not limit BVO's liability when carrying out these repairs. In addition, the recreational facilities on the rooftop are for the exclusive use of residential tenants and are off limits to Votiv.

---

[27] CP at 493.
[28] Id.
[29] CP at 15.
[30] Id.
[31] CP at 307.

The contract does not use an everyday definition for "premises" that included the building's roof, and we will not write one in.[32] Section 32 applies only when BVO or its agents enter Votiv's premises. Because no entry occurred, the section is inapplicable and does not limit BVO's liability.

### Lack of Control

As alternative grounds to affirm, BVO argues that "it is not liable to Votiv because it lacked ownership of the Roof Deck and control over the Work."[33] But for purposes of summary judgment, BVO conceded that it "accepts Votiv's allegation that it 'directly or indirectly' controlled the Work."[34] Because we perform the same inquiry as the trial court,[35] this concession continues to bind BVO on appeal.

Even without this concession, the undisputed record shows BVO participated in controlling the building project through the Bay Vista Building Association. The Bay Vista building, which is the office tower and residential tower together, has different owners for its different parts. Each part has a different association to manage that part of the building: the Bay Vista Residential Building Association manages the residential part of the building, and the Association of Office Unit Owners manages the office building.[36] Decisions affecting the entire

---

[32] See Riley, 198 Wn. App. at 700 (contract terms should not be given ordinary definitions where the contract demonstrates a contrary intent).

[33] BVO Resp't's Br. at 22.

[34] CP at 223 n.18.

[35] Lakey, 176 Wn.2d at 922.

[36] CP at 231.

8

building are made by the Bay Vista Building Association.[37] The Building Association has only two members: the Office Association and the Residential Association.[38] BVO is the sole member of the Office Association.[39] Each member has equal power over the Building Association. If the Building Association needs to make a decision but its members deadlock, they must submit to binding arbitration.[40] Because the arbitrator's decision binds the members of the Building Association and BVO is the sole member of the Office Association, it is bound by the arbitrator's decisions.

In 2012, the Building Association began exploring ways to repair the roof membrane.[41] The Residential Association and the Office Association deadlocked on the scope and cost of repairs.[42] The Residential Association proposed a more extensive and expensive replacement of the entire roof membrane, and the Office Association disagreed.[43] They entered arbitration in 2016, and the arbitrator adopted the Residential Association's plan for the Building Association.[44] The Building Association, acting on the behalf of its members, began work on the

---

[37] CP at 232.
[38] Id.
[39] CP at 231.
[40] CP at 232.
[41] CP at 31.
[42] CP at 233, 288.
[43] CP at 233.
[44] CP at 286, 293-95.

replacement project in June of 2017.[45]  Because the arbitrator's decision bound the Office Association as one of only two members of the Building Association, the Building Association oversaw repairs on its members' behalf.  And as BVO is now the sole member of the Office Association, BVO participated in the control of the replacement project.

Because BVO can be liable to Votiv for harm from the roof membrane replacement project and nothing in the lease limits that liability, we consider whether the court properly dismissed Votiv's claims for nuisance, breach of the covenant of quiet enjoyment, and constructive eviction.

### Nuisance

In Washington, the tort of nuisance is "'an unreasonable interference with another's use and enjoyment of property.'"[46]  Where, as here, the plaintiff alleges private nuisance, "'an intentional interference with the plaintiff's use or enjoyment is not itself a tort, and unreasonableness of the interference is necessary for liability."[47]  A landlord can be liable for nuisance when carrying out repairs required by a lease if it does so in a manner that interferes unreasonably with its tenant's leasehold.[48]  Reasonableness is typically a question of fact, but a court may

---

[45] CP at 162-63, 234.

[46] Boyle v. Leech, 7 Wn. App. 2d 535, 538, 436 P.3d 393 (2019) (quoting Wallace v. Lewis County, 134 Wn. App. 1, 18, 137 P.3d 101 (2006)); see RCW 7.48.010 (actionable nuisance is "an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the . . . property.").

[47] Bradley v. Am. Smelting & Ref. Co., 104 Wn.2d 677, 689, 709 P.2d 782 (1985) (quoting RESTATEMENT (SECOND) OF TORTS § 821D, at 102 cmt. d (1979)).

[48] See Tiegs v. Watts, 135 Wn.2d 1, 14-15, 954 P.2d 877 (1998) (an ordinary, reasonable business operation "may constitute a nuisance if it is

resolve the issue as a matter of law where reasonable minds could reach only one conclusion by balancing the rights and interests of the parties.[49]

BVO contends its efforts were reasonable as a matter of law because section 12 of the lease required that it repair the roof or risk breach.[50] It is true BVO had an obligation to "adequately maintain [its] retained portions of a building so as to allow the tenant to enjoy the beneficial use of the [leased] portion of the building."[51] And it is also true that concrete removal is inherently noisy work. The question on summary judgment is whether we can reach only the conclusion that BVO's noise mitigation efforts were reasonable.

Here, we have neither absolute interference nor absolute reasonableness. Specific evidence from June 2017 through January 2018 reveals 13 incidents where noise levels reached over 80 decibels in Votiv's office.[52] Construction noise was so loud one day that Tatley-Grund's safety director recommended that Votiv's

conducted in a manner which unreasonably interferes with the use and enjoyment of another's property").

[49] Boyle, 7 Wn. App. 2d at 539. Contrary to BVO's argument that Votiv presented no evidence of unreasonable conduct because it never filed a noise complaint with the City of Seattle, a plaintiff can prove nuisance without showing a nuisance per se. See Moore v. Steve's Outboard Serv., 182 Wn.2d 151, 155, 339 P.3d 169 (2014) (distinguishing nuisance and nuisance per se).

[50] BVO Resp't's Br. at 29 (citing Cherberg v. Peoples Nat'l Bank of Wash., 88 Wn.2d 595, 600, 564 P.2d 1137 (1977)).

[51] Cherberg, 88 Wn.2d 601.

[52] CP at 388-93, 522. We note that the Department of Labor & Industries requires that employees wear hearing protection when noise levels equal or exceed an average of 85 decibels over eight hours, according to measurements by noise dosimetry. Washington Administrative Code 296-817-20015; CP at 522.

employees wear earplugs.[53] Even on quieter days, Votiv's chief executive officer stated noise interfered with his ability to hold meetings, have conferences, and generally conduct business.[54] Other employees complained about noise-induced migraine headaches, about noise preventing them from doing their work evaluating music and media, and about working from home because construction noise made the office unusable.[55]

On the other hand, BVO presented evidence that restricting noisy work only to weekends and evenings would delay completion by years and compromise safety.[56] Tatley-Grund and CWD took steps to mitigate construction noise, such as working with Votiv to schedule noisy work for weekends and around important work events, providing alternative office space for meetings, and monitoring noise levels.[57] But Votiv counters that the alternative meeting space was inadequate for its needs, and that Tatley-Grund did not always follow its own schedule.[58] Considering the evidence in a light most favorable to Votiv, as we must, we cannot conclude BVO and CWD's mitigation efforts were reasonable as a matter of law. Summary judgment is not appropriate on the nuisance claim.

---

[53] CP at 522 (stating "earplugs recommended" where decibels reached 83.9 dBA in Votiv's office).

[54] CP at 379, 388-96.

[55] CP at 581-82, 589-94.

[56] CP at 648.

[57] CP at 33-34, 135-37, 142, 394, 396.

[58] CP at 385, 582.

## Quiet Enjoyment

Votiv claims BVO breached the lease by not honoring the express covenant of quiet enjoyment in the lease. Section 44(n) states, "Tenant may peaceably and quietly enjoy the Premises subject, nevertheless, to the terms and conditions of this Lease."[59] Generally, a covenant of quiet enjoyment "secures the tenant from any wrongful act by the lessor which impairs the character and value of the leased premises or otherwise interferes with the tenant's quiet and peaceable use and enjoyment thereof."[60] Washington cases have recognized a tenant's right to quiet enjoyment in varied factual settings.[61] Those include situations when the landlord's construction work interfered with the tenant's use of the leased premises.

For example, in Bancroft v. Godwin, the court held a landlord was liable for breaching the covenant of quiet enjoyment when a tenant's goods were damaged

---

[59] CP at 504.

[60] Cherberg v. Peoples Nat'l Bank of Wash., 15 Wn. App. 336, 343, 549 P.2d 46 (1976) (landlord breached the covenant of quiet enjoyment by electing to demolish the building, threating to terminate the tenant's lease, and "effectively forc[ing] its tenant to close down its business and temporarily vacate the leased premises"), aff'd in part and rev'd on other grounds, 88 Wn.2d 595, 564 P.2d 1137 (1977); see Ennis v. Ring, 56 Wn.2d 465, 470, 353 P.2d 950 (1959) (landlord's "wrongful interference" with tenant's leasehold can breach the covenant of quiet enjoyment); see also 41 A.L.R.2d 1414 § 10 (originally published in 1955) (covenant of quiet enjoyment protects tenants against acts of a landlord or its agents that constitute a substantial interruption of the quiet enjoyment of the premises, including a substantial interference with possession of the tenant.)

[61] A Washington tenant can bring an action for breach of the covenant of quiet enjoyment and continue to possess their leasehold. See Ennis, 56 Wn.2d at 470 ("If the landlord's conduct has been such as to amount to a breach of the covenant of quiet enjoyment, the lessee, although remaining in possession, may

during a remodel of the building.[62] The landlord in Bancroft decided to remodel the building in which the tenant leased storage space.[63] By deciding to remodel the building, "it was incumbent upon [the landlord] to see that said modification was accomplished in such a manner as not to . . . in any way seriously interfere with the beneficial enjoyment of the tenancy created by [the] lease."[64] Because the landlord improperly supervised the remodel and allowed a water leak that damaged the tenant's goods, the landlord was liable.[65]

Similarly, in Alexis v. Pittinger, our Supreme Court held a landlord's "negligent or wanton" conduct in managing its separate property both breached the covenant of quiet enjoyment and constructively evicted the tenant.[66] The landlord in Alexis leased a parcel of land to a chicken farmer and retained the surrounding property for himself.[67] The landlord expressly reserved the right to clear trees on the surrounding property.[68] The landlord began clearing trees by attaching 15 or 16 sticks of blasting powder to each tree and blowing them up, sending debris into the leased parcel and seriously damaging the tenant's chicken

---

treat the wrongful interference with his possession of the demised premises as a breach of covenant for which an action ex contractu will lie.").

[62] 41 Wash. 253, 253-54, 83 P. 189 (1905).

[63] Id. at 253.

[64] Id. at 255.

[65] Id.

[66] 119 Wash. 626, 627, 206 P. 370 (1922).

[67] Id. at 628-29.

[68] Id. at 628.

house.[69] Although blasting was the customary way of clearing trees, the court explained that doing so within 150 feet of the tenant's property was unreasonable where it "unnecessarily injure[d], damage[d], and deprive[d] a lawful tenant of peaceable possession of the premises."[70] The court affirmed separate damage awards for violating the covenant of quiet enjoyment and for constructive eviction.[71]

And in <u>Matzger v. Arcade Building & Realty Company</u>, our Supreme Court concluded that a landlord breached the covenant of quiet enjoyment by making its leasehold unusable for its intended purpose by modifying part of the building it controlled and depriving the leasehold of natural light required for the tenant's business.[72]

Here, consistent with Votiv's nuisance claim, if there is a genuine issue of material fact whether the landlord engaged in unreasonable conduct that deprived Votiv of the peaceable use and enjoyment of its office, then Votiv's claim for breach of the covenant of quiet enjoyment withstands summary judgment.

BVO argues, however, the lease's covenant of quiet enjoyment is limited by and "subordinate to the other terms and conditions of the lease."[73] It contends section 12 in the lease requires that BVO maintain and repair the roof, so it could

---

[69] Id. at 629-30.

[70] Id. at 630.

[71] Id. at 627, 630.

[72] 102 Wash. 423, 424-26, 428, 173 P.47 (1918).

[73] BVO Resp't's Br. at 28.

not have acted wrongfully by repairing the membrane and the roof.[74] But this interpretation makes the express covenant of quiet enjoyment meaningless where, as here, there are genuine issues of material fact about whether BVO acted unreasonably when fulfilling this duty and deprived Votiv of the use and enjoyment of its office.

Therefore, consistent with its claim of nuisance, Votiv's claim for breach of the covenant of quiet enjoyment is sufficient to overcome summary judgment.

### Constructive Eviction

BVO argues we should affirm summary judgment on Votiv's claim for constructive eviction because Votiv never abandoned its office.[75] Constructive eviction involves an intentional or injurious interference with a leased premises by a landlord or its agents that materially impairs the tenant's power to enjoy the premises.[76] In the context of a commercial lease, landlords have constructively evicted tenants by "'seriously interfer[ing] with the tenant's conduct of business on the premises.'"[77] Proof of interference is not enough, however, because a tenant claiming constructive eviction must abandon the premises within a reasonable

---

[74] Id. at 30.

[75] Id. at 22.

[76] Old City Hall LLC v. Pierce County AIDS Found., 181 Wn. App. 1, 8, 329 P.3d 83 (2014) (quoting Aro Glass & Upholstery Co. v. Munson-Smith Motors, Inc., 12 Wn. App. 6, 8, 528 P.2d 502 (1974)).

[77] Id. at 8-9 (quoting 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.32, at 352 (2d ed.2004)).

time.[78] Abandonment is necessary to show the connection between constructive eviction and actual eviction.[79] Nothing in the record or the briefing suggests Votiv abandoned its office.

Votiv relies exclusively on Aro Glass & Upholstery Company v. Munson-Smith Motors, Inc. to support its argument that constructive eviction "does not require a tenant to abandon the leasehold and physically move out of the leased premises."[80] But Aro Glass actually states the opposite: "When the premises subject to a lease are no longer fit for the purposes intended, the resultant constructive eviction releases the tenant from any further liability to pay rent,

---

[78] Cline v. Altose, 158 Wash. 119, 126-27, 290 P. 809 (1930) ("'As a general rule, the acts of the landlord, in order to amount to a constructive eviction of his tenant, must be such a physical interference with the possession of the tenant, under color of right, as to deprive him of the beneficial enjoyment of the demised premises, in consequence of which he abandons the same.'") (quoting Ralph v. Lomer, 3 Wash. 401, 409, 28 P.760 (1891)); Tennes v. Am. Bldg. Co., 72 Wash. 644, 647, 131 P. 201 (1913) (holding that a party's decision to remain in possession of its leased premises waived its ability to claim constructive eviction, despite being able to show wrongful conduct by its landlord amounting to constructive eviction); Brine v. Bergstrom, 4 Wn. App. 288, 289, 480 P.2d 783 (1971) ("A necessary element of constructive eviction is vacation of the premises by the tenant."); see Buerkli v. Alderwood Farms, 168 Wash. 330, 334-35, 11 P.2d 958 (1932) ("In order to claim and assert a constructive eviction as a defense to an action for rent, the tenant must in fact vacate the premises. Where the tenant continues to occupy the premises, he is liable for rent."); Old City Hall, 181 Wn. App. at 8 ("A constructive eviction prospectively releases the tenant from the obligation to pay rent, so long as the tenant abandons the leasehold in response to the constructive eviction."); 20 A.L.R. 1369 (originally published in 1922) ("The great weight of authority is to the effect that, in order for the lessee to rely upon constructive eviction as a ground for avoiding payment of the rent contracted for, he must surrender or abandon the leased premises.").

[79] STOEBUCK & WEAVER, supra, at 353. A plaintiff can bring a claim for constructive eviction before abandoning its leasehold but must eventually abandon the premises. Aro Glass, 12 Wn. App. at 11.

[80] Appellant's Br. at 30.

provided he abandons the premises to the lessor."[81] Because Votiv fails to show it

abandoned its office, Votiv's constructive eviction claim fails.

## Attorney Fees

The remaining issues all involve awards or denials of attorney fees. Under

section 36 of the lease:

> If either party shall bring any action for relief against the other party, declaratory or otherwise, arising out of this Lease, including any action by Landlord for the recovery of Rent or possession of the Premises, the losing party shall pay the successful party a reasonable sum for attorneys' fees which shall be deemed to have accrued on the commencement of such action and shall be paid whether or not such action is prosecuted to judgment.[82]

We review de novo whether a contract provides a legal basis to award fees.[83]

First, Votiv contends the court erred by awarding attorney fees to BVO

under section 36 of the lease because it erroneously granted summary judgment

and denied reconsideration.[84] Despite assigning error to the findings of fact and

conclusions of law in awarding fees in both instances, Votiv does not argue which

findings are erroneous, nor does it argue the amounts awarded were an abuse of

discretion.[85] Thus, the only issue is whether BVO is a "successful party" under

section 36.[86]

---

[81] Aro Glass, 12 Wn. App. at 11 (emphasis added).

[82] CP at 323.

[83] Hall v. Feigenbaum, 178 Wn. App. 811, 827, 319 P.3d 61 (2014).

[84] Appellant's Br. at 43.

[85] Id. at 6-8, 43-44; Appellant's Reply Br. at 23-24.

[86] See Long v. Snoqualmie Gaming Comm'n, 7 Wn. App. 2d 672, 690, 435 P.3d 339 (2019) ("We need not address an issue that a party does not argue in its

The lease does not define "successful party," so we can ascertain the term's ordinary meaning by turning to the dictionary.[87] "Successful party" is synonymous with "prevailing party," and a "prevailing party" is a "party in whose favor a judgment is rendered."[88] BVO prevails on the issue of constructive eviction, and Votiv prevails on breach of the covenant of quiet enjoyment.[89] "[B]ecause both parties have prevailed on major issues, neither qualifies as the prevailing party under the contract."[90] And neither party argues for a proportional approach to attorney fees.[91] Even if BVO was the prevailing party on summary judgment, it no longer is the prevailing party at this stage of the proceedings. The ultimate prevailing party on the underlying litigation will await the outcome on

---

brief."); RAP 10.3(g) (appellant must specifically designate each allegedly erroneous finding of fact).

[87] Queen City Farms, Inc. v. The Central Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 77, 882 P.2d 703 (1994).

[88] BLACK'S LAW DICTIONARY 1298, 1659 (10th ed. 2014).

[89] Votiv also prevails on the issue of nuisance. But because nuisance is an independent tort not arising out of this lease, neither party is entitled to contractual attorney fees on that issue.

[90] Am. Nursery Products, Inc. v. Indian Wells Orchards, 115 Wn.2d 217, 234-35, 797 P.2d 477 (1990); see Mellon v. Reg'l Tr. Servs. Corp., 182 Wn. App. 476, 499, 334 P.3d 1120 (2014) ("But considering our analysis, each party prevails on a major issue and loses on others. Thus, no party stands as the clear victor meriting such an award [under the contract].") (citing id. at 234; Tallman v. Durussel, 44 Wn. App. 181, 189, 721 P.2d 985 (1986); Oneal v. Colton Consol. Sch. Dist. No. 306, 16 Wn. App. 488, 493, 557 P.2d 11 (1976)).

[91] See Marassii v. Lau, 71 Wn. App. 912, 916, 859 P.2d 605 (1993), abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009).

remand.[92] BVO was not entitled to attorney fees either for summary judgment or for contesting Votiv's motion to reconsider. And in this setting, neither party qualifies for an award of attorney fees on appeal under section 36.

The sole issue in CWD's cross appeal is whether the court erred by denying its request for fees under section 36 of the lease.[93] The court concluded CWD was not party to the lease and not entitled to fees.[94] CWD argues it is an intended third-party beneficiary and may request attorney fees under the lease.[95]

"The creation of a third party beneficiary agreement requires that the parties intend, at the time they enter into the agreement, that the promisor assume a direct obligation to the beneficiary."[96] Here, the lease explicitly excludes all parties except Votiv and BVO from recovering attorney fees under section 36. Lease section 42(z), which CWD fails to discuss, expressly defines "party" as "Landlord or Tenant."[97] Because section 36 only allows a "party" to seek attorney fees, BVO and Votiv did not intend for CWD or anyone else to recover attorney fees under the lease.[98]

---

[92] Even if Votiv is the substantially prevailing party on appeal, it still may not be entitled to attorney fees because this court's decision does not determine the prevailing party for the underlying litigation. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 817-18, 225 P.3d 213 (2009).

[93] CWD Resp't's Br. at 5.

[94] CP at 1463.

[95] CWD Resp't's Br. at 24-28.

[96] Deep Water Brewing, LLC v. Fairway Res. Ltd., 152 Wn. App. 229, 255, 215 P.3d 990 (2009).

[97] CP at 500.

[98] CP at 323.

Votiv argues that it is entitled to costs on appeal under RAP 14.2.[99] In order to determine which party substantially prevailed on review for purposes of an award of costs on appeal, the court has discretion to look beyond the bottom line of reversal or affirmance.[100] And, as provided in the comment to RAP 14.2, "the award of costs is based on who wins the review proceeding—not on who ultimately prevails on the merits." Although Votiv is not the "successful party" for purposes of contractual attorney fees, it is the substantially prevailing party on appeal for purposes of RAP 14.2. Votiv may be awarded costs on appeal by a commissioner or clerk upon compliance with RAP 14.4.

Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

WE CONCUR:

---

[99] Appellant's Reply Br. at 23-24.

[100] See Family Med. Bldg., Inc. v. Dep't of Social & Health Servs., 38 Wn. App. 738, 739, 689 P.2d 413 (1984), aff'd in part & rev'd in part, 104 Wn.2d 105, 702 P.2d 459 (1985).